## HALL–SCOTT MOTOR CAR CO. v. UNITED STATES.
### No. L–113.

Court of Claims.

May 29, 1933.

828

<sup>a</sup> The $82,242.73 includes subitems (w), (x), (y), and (z). Subitems x, y and z are included in items 1, 2, and 3, respectively, and will be deducted from items 1, 2, and 3 if the entire $82,242.73 is recovered.

(<sup>b</sup>) Included in item 1, therefore not included in total.

(<sup>c</sup>) Included in item 2, therefore not included in total.

(<sup>d</sup>) Included in item 3, therefore not included in total.

830

Herman J. Galloway, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The first question concerns plaintiff's claim for $82,242.73, being the tax paid during the period July, 1924, to December, 1925, inclusive, upon the sale of complete truck axle assemblies, and $2,017.58, being the tax assessed and collected upon the sale of spare parts for truck axles. These articles could not be used for passenger automobiles, and during this period Ford motortrucks sold for less than $1,000.

Plaintiff contends that the tax imposed by subd. 3 of section 600 of the Revenue Act of 1924 (26 USCA § 881 note), upon the sale of parts and accessories for automobile truck and wagon chassis did not attach, inasmuch as the axle assemblies for Ford motortrucks could only be used on and were sold for use on Ford trucks selling for less than $1,000, and are therefore not taxable under subdivision 1 of section 600—in other words, that parts and accessories are taxable under subdivision 3 of the section only if they are sold for use on trucks selling for $1,000 or more, and are taxable under subdivision 1; that if the truck is not taxable the parts and accessories therefor are likewise exempt from tax. We cannot sustain plaintiff's contention.

Section 600 imposes a tax "upon the following articles," namely, the articles thereafter enumerated in the subdivisions of the entire section. Subdivision 1 enumerated automobile truck chassis and automobile wagon chassis, and imposed a tax upon those selling for an amount in excess of $1,000. Subdivision 3 provides that the sale of parts or accessories "for any of the articles enumerated in subdivision (1)" shall be subject to the tax specified therein. We think the language of the statute in the tax-imposing provision thereof, that "there shall be levied, assessed, collected, and paid upon the following articles sold * * * by the manufacturer, * * * a tax equivalent to the following percentage of the price for which so sold" required the payment of the tax upon the sale of parts or accessories for any automobile truck chassis and any automobile wagon chassis enumerated in subdivision 1 of section 600, even though the sale of such truck or wagon chassis was not subject to tax under subdivision 1. The word "any" in the phrase "any of the articles enumerated" in subdivision 1 is significant and requires, we think, the collection of the tax upon the sale of parts or accessories for the automobile truck or automobile wagon chassis mentioned in subdivision 1, even though no tax was payable upon the sale thereof.

The plaintiff's construction of subdivision 3 imposing a tax upon parts or accessories requires that the words "enumerated in" be treated as the equivalent of "taxed under," but, in our opinion, this is not permissible.

The regulations of the Treasury Department have consistently required that the tax be paid upon parts or accessories for automobile trucks and automobile wagons even though the sale of the trucks or wagons was not taxable because it was less than the price specified in the statute. Article 15, Regs. 47, provide that "The tax of 2½ percent applies to *all* tires, inner tubes, parts, or accessories sold separately by the manufacturer thereof, unless the sale is made to a manufacturer who furnishes a certificate in the form provided in this article for the exemption of such sale. The above applies regardless of the fact that tires, inner tubes, parts, or accessories may be sold for use on chassis selling for $1,000 or less or bodies selling for $200 or less."

Plaintiff contends that the Treasury regulations are in conflict with the statute, are unreasonable, and should therefore be disregarded. We are of opinion, however, that the regulation is a proper interpretation of the statute, and is therefore reasonable and should not be disregarded. The construction should not be disregarded under the well-established rule that the construction given to an act of Congress by the executive officers charged with its enforcement, although not controlling, is entitled to great weight.

The next question relates to plaintiff's claim for $23,464.80 paid with respect to the manufacture and sale by it of ball-bearing bolts and nuts designated by it as "non-taxable parts," constituting necessary elements of the Ruckstell axle units, which articles were packed and sold with all of the elements constituting a unit assembly; $14,456.61 of this amount was paid April 20, 1928, pursuant to the additional assessment for the monthly periods July 1924 to November 1925 and $4,-

778.83 was paid April 20, 1928, for the monthly periods January 1923 to June 1924. The balance of $4,032.25 was paid on or before November 27, 1923, more than four years before the filing of the claim for refund on December 16, 1927.

The ground upon which plaintiff claims that these parts were exempt from tax is that these particular elements of the complete axle unit were manufactured by it according to the same specifications as those made by other manufacturers and used in machines other than motor vehicles, and were not, therefore, specifically designed or primarily adapted for use on motor vehicles. These parts were specified as taxable under the Treasury regulations. They were necessary elements of the complete Ruckstell axle unit and were manufactured, packed, and sold by plaintiff solely for such use. Under the facts in this case, these articles when so assembled, packed, and sold for use on the automobile axle were primarily designed and specially adapted for use on motor vehicles, and the sale thereof was subject to tax under the decision of this court in Fairmount Tool & Forging Co. v. United States, 42 F.(2d) 591, 70 Ct. Cl. 429. Under that decision this claim of the plaintiff must be denied. The Fairmount Tool & Forging Case related to accessories, but the principle of segregation and sale of an article for a particular use as a basis for classification is applicable as well to automobile parts.

The next question relates to plaintiff's claim for $17,732.10, being the additional tax collected April 20, 1928, upon the boxing and the warehousing or handling expenses billed by plaintiff as a separate item in each case. Finding 15.

In the circumstances of this case, we are of opinion that this item was not a part of the sales price of the axle subject to tax and that plaintiff is entitled to recover the tax collected thereon. The contract between the plaintiff and the Ruckstell Company, of March 10, 1922, provided that the latter should pay plaintiff "for the manufacture and construction of said axles, crated, taxes prepaid, and ready for shipment, the sum of $32 for said axle as then designed for use on Ford passenger cars and $64 for the axle as then designed and constructed for use on Ford trucks." The first transaction between plaintiff and the Ruckstell Company, was an order from the Ruckstell Company to plaintiff to machine axles and assemble housings upon tubes at a price of $19 an axle. Thereafter plaintiff accepted orders from the Ruck-

stell Company for such axles "at a price per set of $50, the said price to include excise tax to be paid by the plaintiff, the painting of certain parts, and the boxing of the parts in a suitable box to contain one set of parts." When plaintiff invoiced these articles to the Ruckstell Company they were invoiced at $44.40 each plus a 5 per cent. war tax of $2.22 and plus warehousing and shipping charges of $3.38, making a total of $50, which was the stipulated price. From the inception of operations under the contract of March 10, 1922, plaintiff invoiced as a separate item a charge for boxing and warehousing. This charge was the cost of such boxing and warehousing service, which work was performed by many persons who were engaged also in other work for plaintiff. The correctness of the charge made is not challenged.

In making its returns and paying the tax upon the axles sold, plaintiff excluded from the computation of the tax the boxing and warehousing charge. Thereafter the Commissioner made an additional assessment of $17,732.10 against plaintiff, which included a tax upon the amount so deducted. Section 900 of the Revenue Act 1921 (42 Stat. 291) and section 600 of the Revenue Act 1924 (26 USCA §§ 881 note, 882) provides that the tax shall be computed upon the price for which the parts or accessories are sold. Article 3, Regs. 47, is to the same effect. The Treasury Department has held in published rulings that if the boxing charge was separately billed to the purchaser, no tax should be levied upon the charge therefor. In L. O. 1096, I–1 C. B. 437, the Bureau of Internal Revenue, in the opinion, held as follows:

"The act is silent as to whether or not boxes, containers, or coverings are to be included in the sales price of a taxable article. It will therefore be necessary to determine the question on principle and in the light of the authorities.

"If a piano be sold without a box (as is frequently done), no one would contend that the purchaser thereof has not acquired an instrument complete in every respect. The language of the statute levying the tax in question clearly indicates that the tax is imposed not upon the piano in package form or as prepared for shipment to the purchaser but upon the article itself measured by the price for which sold. The sale of a piano box or harness is not the sale of a piano.

"It has become the established practice of the Bureau to permit freight and delivery

charges to be excluded from the sales price of a taxable article when such amount is paid by the purchaser as a specific item. * * * This office can perceive no reason why the price charged for a shipping box or harness used in connection with the shipment may not also be excluded if similarly billed. Regulations 47, article 3, states that a taxpayer is entitled to reimburse himself in the amount of the tax if such amount is billed as a separate item. Furthermore by way of illustration it is stated in regulations 47, article 3, that if a manufacturer sells an automobile, including insurance, gas, and oil, and bills it as follows: 'Car $2,000, gas and oil $20, insurance $30, tax $100', the tax is based on $2,000, the selling price of the car as specified. * * *

"It is held, therefore, that the price charged for a shipping box or harness for a piano, if such box or harness be bona fide billed to and paid for by the purchaser as a separate item, is no part of the sales price of the piano and should not be included in the amount taxable under section 900 (4) of the Revenue Act of 1918."

To the same effect is the decision of the Treasury Department in II–1 C. B. 285, where it is said that "It was formerly held that cloth covers used to protect automobiles in transit were taxable as included in the price of the car. It is now held that the price charged for such covers, if they are bona fide billed to and paid for by the purchaser as a separate item, whether the covers are returnable or not, is not part of the sales price of the automobile, and that they are not taxable as parts or accessories for automobiles under section 900 (3) of the Revenue Acts of 1918 and 1921."

This court has held in J. Hungerford Smith Grape Juice Co. v. United States, 63 Ct. Cl. 140, that in instances where the freight was prepaid by the manufacturer the amount thereof should be excluded from the price before computation of the tax, and in Star Motor Co. of California v. United States, 41 F. (2d) 901, 71 Ct. Cl. 348, we held that transportation charges separately invoiced were to be excluded as a part of the sales price of automobiles. In our opinion the foregoing decisions are applicable here and require that the item in controversy be excluded from the sales price of the automobile parts in computing the tax. The charge made by plaintiff as a manufacturer to reimburse it for the cost of boxing the axles and for the warehousing and handling service was not a part of the money or price received by it for the automobile parts or accessories for automobiles taxed. This charge represented the cost of boxing, handling, and warehousing preparatory to delivery of the automobile parts sold. The cost of this service by plaintiff was an expense separate from the cost of the axle and in paying the charge the purchaser was paying for the box and cost of handling separately. Judgment will be entered for plaintiff for the tax paid upon this item.

The next claim of plaintiff is for $17,-259.02, being the additional assessment made upon the difference between the contract price at which plaintiff sold axles manufactured by it to the Ruckstell Company at wholesale and the price at which plaintiff later sold the articles at retail in the eastern territory, pursuant to contracts between plaintiff and the Ruckstell Company.

Plaintiff contends that, inasmuch as the tax is upon the price at which the article is sold by the manufacturer, the tax upon the axles sold in the eastern territory must be computed upon the price of plaintiff, the manufacturer, to the Ruckstell Company, and that the tax of $17,259.02 computed and allowed upon the excess over such price should be refunded.

The defendant contends that the contract arrangement between plaintiff and the Ruckstell Company provided merely for a division of the price for which plaintiff sold the axles to the public, and that the tax was properly computed and collected by the defendant upon the price at which the axles were sold by plaintiff at retail.

The facts show that in March, 1922, plaintiff and the Ruckstell Company entered into an agreement whereby plaintiff was to manufacture the Ruckstell axles and sell them to the Ruckstell Company at a fixed price. They further show that on October 9, 1922, plaintiff and the Ruckstell Company entered into another contract in which it was agreed that plaintiff should have the exclusive right to sell Ruckstell axles for a given period of time to dealers in all the territory east of the Mississippi River, referred to in the findings as the "eastern territory." It was also agreed that plaintiff should purchase the axles used by it for distribution to dealers in the eastern territory from the Ruckstell Company at a stated price and should then sell them to dealers in such territory at the dealers' price. The findings show that in carrying out this contract the parties complied with the plan agreed upon, namely, that plaintiff would

manufacture axles, sell them as a manufacturer to the Ruckstell Company, and repurchase from the Ruckstell Company such quantity as needed for sale as a retailer to dealers in the eastern territory. Upon all axles sold in the eastern territory from October 9, 1922, to January 1, 1924, plaintiff invoiced the Ruckstell Company for such axles at the manufacturer's sales price in the usual form of invoice described in the findings, and the Ruckstell Company then invoiced plaintiff for such axles at the increased price stated in the contract of October 9, 1922. Plaintiff then sold and invoiced the axles to dealers in the eastern territory at the prices to dealers. These were arms' length transactions and were in every respect bona fide.

There were three separate and distinct transactions: (1) A sale by plaintiff to the Ruckstell Company at a certain price; (2) a sale by the Ruckstell Company at a greater price; and (3) a sale by plaintiff to dealers in the eastern territory at dealers' prices. Such plan was fully provided for and contemplated in the contract of October 9, 1922, and was actually carried out by the parties.

Plaintiff gave the Ruckstell Company credit on its books for the difference between the price at which plaintiff invoiced the articles to that company and the price at which that company invoiced the articles to plaintiff. From January 1 until July 1, 1924, when the contract with reference to the arrangement in the eastern territory terminated, plaintiff and the Ruckstell Company ceased the unnecessary work of issuing separate invoices to each other and, in lieu thereof, plaintiff issued a credit memorandum at the end of each month on sales by it to dealers in the eastern territory showing the number of sales and the sales price of the axles to the Ruckstell Company, and the number of sales and the sales price by the Ruckstell Company to plaintiff, crediting the Ruckstell Company with the difference between the two. This procedure likewise constituted the carrying out of the agreement for a separate sale by plaintiff to the Ruckstell Company and the sale by the latter to plaintiff, as provided in the contract of October 9, 1922.

Section 900 of the Revenue Act of 1921 and section 600 of the Revenue Act of 1924 imposed the tax upon the sale by the manufacturer, and article 3 of Regs. 47 provides that "the tax is imposed on the sale by the manufacturer, and should be returned and paid by him whether the sales price is actually collected or not." In view of the express provisions of the statute and the regulations, we are of opinion that the sale in the transactions involving axles sold in the eastern territory, which was the subject of the tax, was a sale by the manufacturer, and that sale occurred when plaintiff sold the axles to the Ruckstell Company. Thereafter plaintiff assumed the position of a retailer of the axles. Plaintiff is entitled to judgment for $17,259.-02 on this item of its claim.

The last item in plaintiff's claim is for $1,743.09, finding 16, included in the additional assessment collected April 20, 1928, and computed by the Commissioner by including in the price to be taxed the excise tax payable upon the articles sold to the Ruckstell Company. The facts show that under the contract of March 10, 1922, the Ruckstell Company was to pay plaintiff for the manufacture of Ruckstell axles, crated, tax prepaid, and ready for shipment, the sum of $32 an axle for passenger cars and $64 an axle for trucks. In each instance plaintiff invoiced the axles to the Ruckstell Company showing a separate item for the axle, as well as a separate item for the tax, and in the payment of the tax to the government it deducted from the contract prices of $32 and $64, respectively, among other items, the tax before arriving at the sum on which the tax should be computed. The Commissioner levied an additional assessment against plaintiff based upon the full contract price of $32 and $64, respectively, and the amount sought to be recovered under this item of the claim represents the tax upon the tax item separately invoiced by plaintiff to the Ruckstell Company in each case on all sales after July 1, 1924.

We are of opinion that plaintiff is not entitled to recover on this item of its claim. The Ruckstell Company under its contract with the plaintiff agreed to pay a stipulated price for each axle regardless of a tax upon the sale; consequently the tax was properly computed upon the full sales price. Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251. Plaintiff relies upon art. 3, Regs. 47, as relieving it from tax upon a sales price which included the amount of the tax it was required to pay to the government on the ground that the tax item was invoiced as a separate item to the Ruckstell Company; however, the contract between plaintiff and the Ruckstell Company did not expressly provide that the Ruckstell Company pay plaintiff a certain price for the axle and reimburse it for whatever manufacturers' excise tax it had to pay, but, on the contrary, the Ruckstell Company was required to pay the full contract price whether

the tax which plaintiff might be required to pay to the government was high or low, or whether there was no tax whatsoever. Article 3 of the regulations does not, we think, apply to a case of this character. In our opinion the regulations do not contemplate that a deduction shall be made from the sales price in computing the tax unless, under an arrangement, the purchaser is to reimburse the manufacturer for the tax as such and obtain a reduction in the purchase price if the tax is reduced or repealed.

As we construe the contract between the plaintiff and the Ruckstell Company, the sales prices of the axles were $32 and $64, respectively, during the life of the contract regardless of whether or not the plaintiff, as the manufacturer, was required to pay a tax to the government.

Judgment will be entered in favor of plaintiff for $34,991.12, with interest at 6 per cent. per annum from April 20, 1928, as provided by law. It is so ordered.

BOOTH, Chief Justice, did not hear this case on account of illness and took no part in its decision.