### FAIRMOUNT TOOL & FORGING CO. v. UNITED STATES.

#### No. J–106.

Court of Claims.
June 16, 1930.

This case having been heard by the Court of Claims, the court, upon the report of a commissioner and the evidence, makes the following amended special findings of fact:

I. Plaintiff, during the times hereinafter mentioned, was and now is a corporation organized, existing, and operating under and by virtue of the laws of the state of Ohio, with its principal place of business located at Cleveland, Ohio, and during said time manufactured and sold tools for all purposes, i. e., railroad and agricultural equipment, general mechanical tools; equipment for the various trades—bricklaying, stonecutting, and contractors, as well as for trucks, automobiles, and boats.

II. Plaintiff and all the officers thereof have at all times borne true allegiance to the United States and have not in any way voluntarily aided, abetted, or given encouragement to rebellion against the United States. It is the sole owner of the claim hereinafter stated, no action has been had thereon before Congress or any governmental department, and no part thereof has been sold or assigned.

III. No tax was paid on the tools manufactured by plaintiff when sold separately, but when assembled and made up into a kit plaintiff was required to and did pay taxes thereon.

In February, 1923, plaintiff published a catalogue, herein described as Plaintiff's Exhibit 2, which by reference is made a part of this finding, wherein are illustrated and described the tool kits the subject of this suit. On page 50 thereof No. 350 kit is described as "Designed for sale to used-car distribu-

tors," which contains a hammer; 3 wrenches of different sizes; 1 adjustable 9-inch wrench; 1 pair combination pliers, 6 inch; 1 screwdriver, 3-inch round shank; and 1 cold chisel, ⅜ inch. These tools were assembled in a canvas roll with a pocket for each tool.

On page 51, No. 378 kit is described as containing, in addition to the same articles described in No. 350, 1 screwdriver, 5-inch square shank; 1 solid punch; 1 cotter-pin puller; and 1 flat file. It was also assembled into a canvas roll. However, it is not stated for what purpose it was designed.

Kit No. 5 is described on page 52, which states that it is "Designed for carrying in door pocket so that the necessary tools for quick repairs may be readily accessible." It contains 1 hammer, 1 pair combination pliers, 1 wrench, and 2 screwdrivers, and is assembled in a canvas roll.

No. 10 kit, described on page 53, states that it is "Designed as a moderate priced set of highest quality tools for the owner of medium and low priced cars."

No. 10-F kit is stated to be "Designed particularly for use on Ford and Willys Overland cars," and shows also a combination of tools similar to those heretofore described, and is assembled in a canvas roll.

No. 15 kit is stated to be "Designed for owner that wants a better tool kit than the one that came with his car. All tools are properly heat-treated and highly finished so that it will outlast the car." It contains in a canvas roll a combination of tools similar to those above described and also a wrench with spark plug and handle, and 1 tire and rim tool.

No. 20-P kit is stated to be "Designed for the summer tourist. With a 20-P kit in his equipment he is prepared for any emergency." It also contains an assembly of various tools as heretofore described.

No. 20-T kit is described as being "Designed for use on trucks, busses, fire apparatus, and heavy tractors. Particular attention has been given to quality in this set." It also contains a number of tools assembled in a heavy canvas roll.

No. 25 kit is described as being "Designed for the garage mechanic for a portable emergency set and the car owner who does his own repair work." The tools in this kit are assembled in a canvas roll.

No. 30 kit is described as "This set is for the man who wants something better. The tools are polished and have a very attractive appearance." The tools herein are assembled into a canvas roll.

No. 35 kit is described as being "Designed for use in the private garage. One tool kit like the 20-P should be kept in the car at all times and one like the number 35 in the garage at all times. Full finished tools and a tool for every purpose." It contains an assembly of a number of tools and is put in a canvas roll.

Illustrations of all the above-mentioned kits are found in said catalogue, Exhibit 2, on pages 50 to 60, inclusive.

IV. Plaintiff also assembled an assortment of tools in a green-lined container. It had the same character of tools as in the canvas rolls, except some of the pliers were nickel-plated instead of steel black finish, the hammer was more polished, and was advertised for the Christmas trade and put up in Christmas packages. It is stated in plaintiff's advertisement that "The No. 328 straw finish set appeals strongly to the women folks," and it is also stated that "No. 400 set will be appreciated by the car owners and others who do not own automobiles but can always find some use for a practical set of tools."

The tools taxed in this case by the commissioner as packed and sold were primarily adapted for use on automobiles.

V. Plaintiff made and filed its manufacturer's excise tax returns monthly for the period February, 1919, to June, 1924, inclusive, showing the amount of tax due thereon which was duly assessed on such returns by the Commissioner of Internal Revenue, paid by plaintiff, for the months, in the amounts, and on the dates hereinafter set forth as follows:

| Period | | Year | Page | Line | Amount | Date paid |
|---|---|---|---|---|---|---|
| Year | Month | | | | | |
| 1922 | Nov. | 1922 | 30 | 7 | $425.25 | 11/18/22 |
| 1922 | Nov. | 1922 | 30 | 7 | 250.00 | 1/17/22 |
| 1922 | Nov. | 1922 | 30 | 0 | 250.00 | 12/21/22 |
| 1922 | Dec. | 1922 | 11 | 2 | 87.92 | 12/31/22 |
| 1923 | Jan. | 1923 | 6 | 0 | 23.65 | 1/2/23 |
| 1923 | Feb. | 1923 | 2 | 5 | 38.91 | 2/1/23 |
| 1924 | Aug. | 1924 | 26 | 2 | 670.44 | 4/7/27 |
| 1927 | April | 1927 | 505 | 3 | 203.96 | 4/7/27 |

VI. On July 28, 1923, plaintiff filed its claim for refund No. 313138 of manufacturer's excise tax so paid on tool kits for the period February, 1919, to December, 1922, inclusive, in the amount of $1,075.73, which was allowed in the amount of $421.21 and rejected by the Commissioner of Internal Revenue in the amount of $654.52 on De-

cember 9, 1924, and subsequent thereto the commissioner found an excessive refund had been made to plaintiff in the amount of $155.-26, which was paid by plaintiff on October 10, 1925, in the amount of $69.63 and on June 26, 1926, in the amount of $85.63.

VII. On June 25, 1926, plaintiff filed its claim for refund No. 353945 of manufacturer's excise tax, penalty, and interest, assessed against and paid by plaintiff on tool kits for the period May, 1919, to December, 1922, in the amount of $90.17, which was duly rejected by the Commissioner of Internal Revenue on January 5, 1927.

VIII. On April 2, 1927, plaintiff filed its claim for refund No. 7830 of manufacturer's excise tax so paid on tool kits for the period January, 1923, to June, 1924, inclusive, in the amount of $874.40, which was duly rejected by the Commissioner of Internal Revenue on December 7, 1927.

G. M. Wilmeth, of Washington, D. C., for plaintiff.

R. C. Williamson, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges.

BOOTH, Chief Justice.

Section 900 of the Revenue Act of 1918, 40 Stat. 1057, 1122, provides as follows:

"That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motorcycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum;

"(3) Tires, inner tubes, parts, or accessories, for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum."

The Revenue Acts of 1921, § 900, 42 Stat. 227, 291, and 1924, § 600, 43 Stat. 253, 322, in so far as the issue involved in this case is concerned, in nowise change the law.

The plaintiff, an Ohio corporation, manufactures and sells to jobbers and dealers a great variety of standard mechanics' and machinists' tools. The segregated units which occasion this litigation are accurately described in finding III. As a typical illustration "Kit 10–F" will suffice. This aggregation is set forth in plaintiff's catalogue as "designed particularly for use on Ford and Willys Overland cars," and is made up of ten individual tools embracing a hammer, pliers, six wrenches, and two screwdrivers, encased separately in a canvas roll designed for compactness and convenience and packed for the dealers in an individual carton, with a list price of $5 printed thereon. Kits of more extensive make-up and costing more are also advertised and commented on as possessing superior advantages.

The Commissioner of Internal Revenue assessed and collected a manufacturers' excise tax upon the foregoing "kits," justifying the collection under the above revenue laws. The plaintiff filed a claim for refund, which was denied, and hence this suit to recover the amount claimed.

The plaintiff seeks to escape taxation, upon a contention that the regulations of the Commissioner, with respect to automobile accessories, are too comprehensive and therefore illegal in including such general purpose articles, which when sold separately are concededly nontaxable, but become so when segregated in units and advertised for use on an automobile.

The regulations challenged go much into detail and read, so far as pertinent here, as follows:

"Art. 14. * * * Any article which has reached a state of manufacture wherein it is in itself a component part or accessory, and is of such a nature that it may be used or attached by an ordinary repair man or individual user as distinguished from a manufacturer or producer, is subject to tax as a 'part' or 'accessory.' * * *

"Art. 15. * * * any article designed or manufactured for the special purpose of being used as or to replace a component part of any such vehicle and which by reason of some peculiar characteristic is not such a commercial commodity as would ordinarily be sold for general use and which is primarily adapted only for use as component part of such vehicle. * * *

"Articles, however, which ordinarily would be classed as commercial commodities become parts when, because of their design or construction, they are primarily adapted for use as component parts of such vehicles.

"Component parts of articles taxable under this definition are taxable when sold separately, if they have reached such stage of manufacture that they are primarily adapted for use as such a component part. * *. *

"Art. 16. * * * any article designed to be attached to or used in connection with such vehicle to add to its utility or ornamentation and which is primarily adapted for use in connection with such vehicle, whether or not essential to its operation. * * *

"Articles which have a general commercial use and which are not especially designed and peculiarly adapted for use in connection with automobile trucks, automobile wagons, other automobiles, or motor cycles are not subject to tax as 'parts' or 'accessories.' * * *

"Parts or accessories for automobile trucks, automobile wagons, other automobiles, or motor cycles primarily adapted for use on or in connection therewith when sold for any other purpose are not taxable, provided the purchaser files with his order a statement that such parts or accessories are to be used on or in connection with another article of commerce not enumerated or included in subdivisions (1), (2), or (3) of section 900. For example, a self-starter primarily adapted for use on an automobile, if sold to a manufacturer of motor boats, such manufacturer stating in his order that it is to be used in the manufacture of a motor boat and not upon an automobile, is not taxable."

■ The machinery of an automobile necessitates the employment of a variety of accessories. Article 16, quoted above, expresses the general conception of the Commissioner in dealing with the class of articles. Tools of general utility, i. e., capable of use for a variety of purposes, may not escape classification as an automobile accessory upon this single fact. This, we think, is apparent. Ordinary monkey wrenches, pliers, hammers, etc., may serve a variety of useful purposes; but when set aside and singled out for an especial purpose, the very necessity of so doing emphasizes the correctness of classifying them as accessories to the purpose. The plaintiff, in order to appeal to a special demand, an essential demand, segregates from his large stock of merchandise the particular units which serve the customers' especial necessities, and gives to the public the merits of his offering by assuring him in public advertisements that the "kits" meet all the especial emergencies that may be remedied by the use of the tools purchased. It is only when this is done that the Commissioner taxes the articles. The fact that tools of this design, functioning as these tools do, were manufactured prior to the advent of the automobile, and are not now, nor never were, especially designed for use on an automobile, is not in and of itself determinative. See Cole Storage Battery Co. v. United States, 65 Ct. Cl. 164; Walker Mfg. Co. v. United States, 65 Ct. Cl. 394; Advance Automobile Accessories Corporation v. United States, 66 Ct. Cl. 304.

The issue to be solved is dependent upon the facts of each case, and if a manufacturer offers to the automobile trade an essential accessory, one which is universally recognized as an indispensable accompaniment to meet emergencies, or maintain the integrity and workability of the car, he surely falls within the classifications set forth in the regulations of the Commissioner. The individual tools which compose the "kits" here involved would be instantly recognized by a car owner at all familiar with its mechanism as both essential and indispensable when needed for use. It is only when so advertised and segregated from the general lot that the taxing acts are invoked by the Commissioner. Manufacturers have a definite and express way of avoiding the tax when sold for other and different purposes. See Magone v. Wiederer, 159 U. S. 555, 16 S. Ct. 122, 40 L. Ed. 258. See, also, Universal Battery Co. v. United States, 50 S. Ct. 422, 74 L. Ed. 1051, decided by the Supreme Court May 26, 1930.

The plaintiff alleges in its petition the right to recover $1,688.72, with interest. The statute of limitations precludes a recovery of any sum in excess of $964.56 with interest. The findings disclose the situation with respect to this fact, and the plaintiff has not challenged the correctness of the same.

The petition will be dismissed. It is so ordered.

This case was tried before the appointment of WHALEY, Judge. He therefore took no part in its decision.