**CROWN PRODUCTS COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. 01675.

United States District Court
D. Nebraska.

April 5, 1965.

Michael J. Jones, of Fitzgerald, Brown, Leahy, McGill & Strom, Omaha, Neb., for plaintiff.

Howard N. Singer, Dept. of Justice, Washington, D. C., and Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., for defendant.

ROBINSON, Chief Judge.

This is an action instituted by Crown Products Company, a Nebraska corporation with its principal place of business in Nebraska, against the United States of America for the recovery of manufacturer's excise taxes which were allegedly wrongfully collected by the defendant. Jurisdiction arises in this Court by reason of 28 U.S.C.A. § 1346.

The item in controversy is a curved rubber hose manufactured by Crown Products Company [Crown or taxpayer hereafter] for use generally as a conduit for a cooling medium between engine cooling systems and radiators. The hose was perfected by Glenn B. Williams, the president of the taxpayer in the late 1930's, and a patent thereon was granted in the 1940's. The problem which prompted the invention is that many manufacturers of engines do not maintain the cooling system and the radiator on the same horizontal or vertical level, thus necessitating a curve in the hose or conduit. Prior to Williams' invention, a straight hose was used and bent in an attempt to properly fit the engine.

There are six different models of the hose, each one 36" long and marked at one inch lengths. Each of the models is curved in a different fashion to meet the various problems presented by different engine models. The one inch markings are provided so that the hose can be accurately cut for a number of uses. Approximately 80% of the automobile engines in this country can be properly fit by cutting one of these six models in the specified place. Because of this characteristic of potential use on many different automobiles, the hose has come to be known as the universal curved hose. The obvious advantage of the hose is that inventory difficulties are cut to a great extent by not having to stock a specific hose for each of the models of automobiles. The six models of universal hose do the job as well.

The question involved here is whether or not the taxpayer, as producer of this universal hose, is liable for the excise tax imposed on manufacturers of automobile parts and accessories. In 1962, an audit was made by the District Director of Internal Revenue of the taxpayer's books for the years 1958, 1959 and 1960. A deficiency was declared in respect to the excise tax on the universal hose in the amount of $2,007.63 for 1958, $2,248.51 for 1959, and $1,691.63 for 1960. These amounts were paid by the taxpayer and it is the recovery of these amounts which prompts the present action.

The statute which is involved here is 26 U.S.C.A. § 4061, which provides in pertinent part as follows:

"[b] Parts and Accessories.—There is hereby imposed upon parts or accessories [other than tires and inner tubes and other than automobile radio and television receiving sets] for any of the articles enumerated in subsection [a] sold by the manufacturer, producer, or importer a tax equivalent to 8 percent of the price for which so sold * *."

Subsection [a] as mentioned in the statute concerns automobiles, trucks, buses, etc.

To find an administrative interpretation of the term "parts or accessories" we must turn to Treasury Regulations 46 [1940 ed.]:

§ 316.55 DEFINITION OF PARTS OR ACCESSORIES.

"[a] The term 'parts or accessories' for an automobile truck or other automobile chassis or body, taxable tractor, or motorcycle, includes [1] any article the primary use of which is to improve, repair, replace, or serve as a component part of such vehicle or article, [2] any article designed to be attached to or used in connection with such vehicle or article to add to its utility or ornamentation, and [3] any article the primary use of which is in connection with such vehicle or article whether or not essential to its operation or use. However, such term does not include tires, inner tubes, or automobile radio or television receiving sets, since these articles are expressly excluded by the statute from tax on parts or accessories. With respect to fare registers and fare boxes for use on busses and automobiles, see § 316.140.

"[b] The term 'parts and accessories' shall be understood to embrace all such articles as have reached such a stage of manufacture that they are commonly or commercially known as parts and accessories whether or not fitting operations are required in connection with installation. The term shall not be understood to embrace raw materials used in the manufacture of such articles."

The taxpayer here has the burden of proving that it is not liable for the tax. Because of this burden and the fact that we must view this matter in the light most favorable to Crown, we shall discuss the issues as presented by Crown in its brief. Basically, the taxpayer contends two things: [1] The universal curved hose is not a part or accessory since it is not adapted for use on a specific automobile, i. e. it must be cut before it can be used. [2] Even if it is a part, it is not an *automobile* part within the meaning of the statute and regulations.

We will concern ourselves first with the question of whether or not the hose is a part. Crown cites S.T. 573; C.B. 1932, page 473 in which the terms "for use in connection with a particular make of automobile," "when cut into prepared lengths," and "to fit particular automobiles" are used. It is contended that since the universal hose is cut in standard lengths and cannot be used to fit particular automobiles it is therefore not a part. It is in essence nothing more than bulk material and unless it can be used as is without any fabrication, it cannot be considered to be a part. In support

of this contention, the testimony of two of the officers of the taxpayer was given to show their opinion as experts that the hose was not a part.

The taxpayer mentions on page 12 of its brief that the distinction being made here is a fine distinction. We must go one step further and state that it is a distinction without a difference. The universal hose can be used on a variety of models of automobiles, but it has been specifically adapted for use on a certain class of automobiles. Instructions supplied by the taxpayer indicate at which marks the hose should be cut to fit the specific automobile. The hose has been produced with the curve in it. All that remains to be done to apply the hose to a specific automobile is the simple operation of cutting the hose—an act which is in essence a mere fitting operation in accordance with the regulation quoted above. The hose is aimed at cutting inventory problems and the only way that this can be done is to replace specific hose usable only on one automobile with specifically formed hose which can be used on various models. But suitability for use on a variety of models because of a simple fitting operation is not to say that the product is not a part. It is an ingenious and very useful idea, but it is essentially a part and the necessity for cutting does not in this instance change that status.

Neither can it be said that this hose is bulk material. The taxpayer's own witness described the process of cutting fifty foot lengths of hose [which, incidentally, would be considered bulk] into smaller lengths and then cooking the hose into the desired curve. This indicates something more specific than mere bulk material and we must so hold.

Both Crown and the Government refer to Rev.Rul. 59–290, 1959–2 Cum.Bull. 252, which discusses the applicability of the excise tax to brake lining. The lining apparently comes "in the form of rigid molded pieces cut to various lengths, thicknesses, and degrees of curvature." Further operations such as counter-boring, cutting and drilling must then be performed while the lining is being installed in the brake shoe. The ruling provides:

"It is held that, since the brake lining segments described above are cut to length for application to automobile or automobile truck brakes, they are automobile parts or accessories within the meaning of section 4061[b] of the Code. Accordingly, sales of such lining segments are subject to the tax imposed by that section of the Code, even though additional cutting, drilling, and boring operations are required in attaching the linings to brake shoes."

Even though further fitting operations which appear to be much more extensive than that required on the universal hose are required for brake lining, the tax will still apply. Even if the ruling had provided that the brake lining had to be cut for use in a *specific* automobile before this tax would apply, we believe that the situation would be analogous to the present case. The fact that a simple fitting operation must be made before application or installation will not of itself prevent the article in question from being a part. In our opinion, the attempted distinction flies in the face of the obvious.

Crown also contends that the hose must be commonly or commercially known as a part as per subsection [b] of the regulation quoted above. The argument that this imposes an additional requirement to those set out in subsection [a] of the same regulation was disposed of by the Ninth Circuit in Masao Hirasuna v. McKenney, 245 F.2d 98 [C.A.9th, 1957] as follows:

"In our view, however, the second paragraph of § 316.55 is not meant as an additional requirement to be superimposed on the requirements set forth in the first paragraph. The real purpose of the second paragraph is not to restrict the scope of the first, but to prevent the first from being too narrowly construed in a

situation where 'fitting operations' are required in connection with installation."

This indicates an attempt to avoid too narrow of a construction where some fitting operation must be made in installation of the article. It is apparent that the taxpayer is contending for what we consider to be a construction of the regulation that would be too narrow.

Nor can we place a great deal of emphasis on the testimony of the taxpayer's officers that they do not consider the hose to be a part. This is just like saying "I don't think this is a part" [which the taxpayer contends in this case] and when asked why, replying, "Because I don't think it is." The taxpayer is simply using its own personnel as authority for the position it is attempting to prove. While we recognize the integrity of the witnesses, we must also recognize their deep interest and prejudice in this respect. This is only natural, but leads us to de-emphasize the weight of their testimony.

We must, then, conclude that the universal curved hose is a part, contrary to the contention of the taxpayer.

Next we shall take up the question of whether or not the hose, having been determined to be a part, can be considered to be an automobile part. If it is such a part, the taxpayer must pay the excise tax. If it is not, the taxpayer will be entitled to the relief which it has requested.

With respect to the question now being discussed, the rules involved have been clearly stated both by the Supreme Court of the United States and by the Eighth Circuit Court of Appeals. The Supreme Court made the following statement in Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 [1930]:

"The administrative regulations issued under section 900 uniformly have construed the term 'part' in that section as meaning any article designed or manufactured for the special purpose of being used as, or to replace, a component part of such vehicle, and which by reason of some characteristic is not such a commercial article as ordinarily would be sold for general use, but is primarily adapted for use as a component part of such vehicle. * * *

"This construction of those terms has been adhered to in the Internal Revenue Bureau for about ten years, and it ought not to be disturbed now unless it be plainly wrong. We think it is not so, but is an admissible construction. Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used. * * * [A]rticles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

In Durkee-Atwood Co. v. Willcuts, 83 F.2d 995 [C.A.8th, 1936], the Eighth Circuit quoted Universal Battery, supra, and also stated:

"Articles equally adapted and commonly used for a variety of purposes are not parts or accessories for automobiles or trucks. * * *

*   *   *   *   *   *

"As has already been observed, the test is not as to the volume of sales, but, rather, the fitness and the special adaptability of the article for purposes other than for automobiles and automobile trucks."

■■ The record clearly shows that the great majority of sales of the universal curved hose is for use on automo-

**1014**

biles. But as the Durkee case points out, the volume of sales alone is not sufficient to justify a finding that the hose is an automobile part. The test appears to be equally adapted and commonly used for other purposes. If the hose is so adapted and used, it will not be an automobile part.

It is obvious that a part such as a hose can be used anywhere that it might fit. But almost any product can be used for some other purpose than that for which it is specially adapted. Thus, the Universal Battery case made it clear that the article need not be used solely and exclusively for automotive purposes. The universal hose was apparently invented to solve a problem that had developed in the production of automobile engines. The patent applied for and granted on behalf of the hose indicates, that the hose was created for automotive purposes. Although it is conceded that the patent application by no means limits the use of the article, it is an indication as to the purpose for its creation and that to which it is specially adapted.

The instructions for the use of the hose and the curves cooked into the hose were made almost exclusively for the proper installation in the engine of an automobile. The witnesses for the taxpayer stated that the hose is used for a number of other purposes and a catalog for 1960 showed its use at least to a certain extent in tractors. But this does not change the fact, sufficiently established in the record, that the universal curved hose is primarily adapted for use in automobiles. It may be used for other purposes and in some instances may be equally adapted to such other uses, but it is not necessary that exclusive use in automobiles be shown. If such were the case, it would be rare, indeed, that any article would be subject to the manufacturer's excise tax on automobile parts.

Thus we must find that although the universal hose is adapted for some other purposes, it is primarily adapted for use in automobiles.

In regard to common use, we are unable to find sufficient evidence in the record to sustain a finding by this Court that the hose is commonly used for other purposes. The only evidence that is of value shows that the hose has been used at times for other purposes, but there is no indication that such use is common. The market for the universal hose, as shown by the Government's witnesses, is basically in the automotive field. The taxpayer has the burden of proof in this type of case and we must find that this burden has not been met on the question of common use.

 The universal curved hose is an automobile part within the meaning of § 4061 of the Internal Revenue Code of 1954. The burden of proof imposed on the taxpayer to show that it is not such a part has not been met. Accordingly, the relief requested herein must be denied.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52[a] of the Federal Rules of Civil Procedure. Counsel for the Government will prepare and submit an appropriate order of judgment within fifteen (15) days.