---

Wilson C. Piper, Harry K. Mansfield, and George T. Finnegan, Boston, Mass., for plaintiff.

Thomas P. O'Connor, Ass't. U. S. Atty., Boston, Mass., Marvin Garbis, Dept. of Justice, Tax Division, Washington, D. C., for defendant.

CAFFREY, District Judge.

This suit for refund of manufacturer's excise taxes paid by plaintiff was tried to the Court. The plaintiff seeks a refund for taxes assessed and paid pursuant to the requirements of Sec. 4061 (b), Internal Revenue Code, on account of sales of portable baby beds manufactured by plaintiff and sold by it during the period July 23, 1959 to November 30, 1959. At the trial plaintiff filed a written waiver of its claim for refund of manufacturer's excise taxes paid by it on or about February 1, 1960 for the quarters ended September 30 and December 31, 1959 applicable to portable baby car seats manufactured and sold by it during the same period.

It was stipulated in writing (1) that plaintiff is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business in the City of Newton, and that it is engaged in manufacturing

**ROSE–DERRY COMPANY, Plaintiff,**
v.
**UNITED STATES of America, Defendant.**
Civ. A. No. 63–66–C.

United States District Court
D. Massachusetts.

June 30, 1965.

and selling mattresses, padded goods, and other products including portable baby beds and portable baby seats; (2) that plaintiff filed claims for refunds on April 27, 1960; and (3) that plaintiff did not include the manufacturer's excise tax in respect of the portable baby beds in the price thereof and has not collected the amount of such taxes from any of the persons who purchased said baby beds.

Two witnesses testified at the trial. They were Edward Rose, President of plaintiff, and Elliot Mover, President of Bunny Bear, Inc., a company which manufactures articles similar to the baby beds and baby seats manufactured by plaintiff.

The issue for determination in this case is the very narrow issue: Were the portable baby beds manufactured and sold by plaintiff articles primarily adapted for use in automobiles, within the meaning of Treasury Regulation 40.4061 (b)–2.

Section 40.4061(b)–2(a) provides: "The term 'parts or accessories' includes * * * (3) any article the primary use of which is in connection with such chassis body * * * whether or not essential to its operation or use * * *"

Section 40.4061(b)–2(d) provides: "Examples of articles which are taxable as parts or accessories are * * * baby seats for automobiles, automobile beds * * *"

Plaintiff urges that the regulation if applicable to its portable baby bed is invalid, relying principally on Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930), and McCaughn v. Electric Storage Battery Co., 63 F.2d 715, 717 (3 Cir. 1933).

I find that the attached photograph is a fair representation of the car bed made and sold by plaintiff, which consists of a bassinet-type car bed suspended from a rectangular steel frame and fitted with a plastic-covered pliable mattress. It is flared at one end to allow additional room

for the growing infant. Two inverted U-shaped metallic carrying handles are permanently affixed to the sides at suitable points for carrying purposes. These may be rotated to rest against the side of the car bed when not in use, leaving the top free for access to the baby. It has permanently fixed U-shaped steel supports attached to the frame in such a manner that the closed end of the U, which is at right angles to the two arms of the U, rests flat on the automobile seat, automobile floor, or other solid surface, as desired. These U-shaped legs may be folded flat against the bottom of the car bed when not in use and may be locked in position when used to support the car bed. Many, but not all, of the car beds are convertible to car seats through the use of a hinged device in the middle thereof. All models have attached to the car bed frame two pairs of lugs, one pair located on one side of the car bed and the other pair at the non-flared end of the car bed. Three-position steel hooks are furnished with each car bed which may be attached to either pair of lugs. These hooks fit over the back of the driver's seat, as shown in attached photograph. These car beds are not designed for permanent installation in an automobile or to fit any particular automobile. Plaintiff's advertising material stresses the fact that they fit all cars.

■■ Plaintiff argues that the carrying handles have no use in the car and I so find; but I further find that the handles have a definite utility in carrying the car bed from the home to the car and from the car back to the home or other destination. I find that the primary use of these car beds is to provide a safe, comfortable mode of transportation for infants of tender years, usually under the age of two, while they are being transported in automobiles. I am aware of the fact that upon arrival at destination an infant can be taken from the car in the car bed and allowed to remain in it for some period of time outside the car. I find that this use does not derogate from the fact that these car beds are advertised, sold, and, most important, primarily adapted, for use in cars. Plaintiff has not sustained its burden of showing that the Commissioner's determination was erroneous, nor has plaintiff made a showing on the basis of which this Court may properly rule that Treasury Regulation 40.4061(b)–2(d) is invalid, either as applied to it or generally, or that this regulation is unreasonable or plainly inconsistent with the statute under which it was promulgated.

In the Universal Battery case, the Supreme Court reminded us that the construction of a statute by the Internal Revenue Service "ought not to be disturbed now unless it be plainly wrong," and that "articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles even though there has been some other use of the articles for which they are not so well adapted."

Having in mind that these car beds in fact are exactly what they are called, I find and rule that they are primarily adapted for use in motor vehicles despite the fact that they are also susceptible of being put to certain other uses. It would seem obvious, and I find, that a small car bed of the size of plaintiff's product is not as well adapted for use outside the car as the conventional size crib which is considerably larger and roomier. I find that the use of these car beds in an automobile is their primary use and that use at the beach, or on picnics, or visiting relatives, is a secondary use.

I rule that plaintiff's car beds manufactured in 1959 under the trade names Tour-A-Bed and Trav-L-Bed were properly subjected to the manufacturer's excise taxes on automobile parts and accessories and that, consequently, plaintiff is not entitled to any refund on account of the payment of such excise taxes.

The complaint is dismissed, with prejudice.