**MARWIL PRODUCTS CO.,**
a Corporation,

v.

**The UNITED STATES.**

No. 195–65.

United States Court of Claims.

Dec. 12, 1969.

Herbert Buckman, Cleveland, Ohio, attorney of record, for plaintiff. Andrew J. McLandrich, Cleveland, Ohio, of counsel.

Frances M. Foltz, with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a) [since September 1, 1969, Rule 134(h)]. The commissioner has done so in an opinion and report filed on August 22, 1969. Neither party has filed a notice of intention to except to the commissioner's report and the time for so doing pursuant to the rules of the court has expired. On October 14, 1969 defendant filed a motion for judgment pursuant to Rule 141(b) requesting that the court adopt the commissioner's findings of fact, opinion, and recommendation for conclusion of law as the basis for its judgment in this case. Plaintiff has filed no response to defendant's said motion and the time for so doing pursuant to the rules of the court has expired. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby grants defendant's motion and adopts said opinion, findings and recommended conclusion of law as the basis for its judgment in this case without oral argument.* Therefore, plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

BERNHARDT, Commissioner.

This is an action to recover Federal excise taxes paid by plaintiff for calendar years 1958, 1959, and 1960. The sole issue is whether muffler clamps, manuactured and sold by plaintiff during those years, are taxable as "parts or accessories" for an automobile under section 4061(b) of the Internal Revenue Code of 1954. The facts are set forth at length in succeeding findings and will be summarized here only to the extent needed to explain the basis of the conclusion reached that plaintiff is not entitled to recover.

Plaintiff, Marwil Products Co., is a Michigan corporation with its principal office and place of business in Fort Loramie, Ohio. Since 1945 and during the taxable years in issue plaintiff manufactured and sold, *inter alia,* a fastening device commonly known and advertised in automotive circles as a muffler clamp. Plaintiff's product consisted of a U-bolt, a clamp or "saddle", two nuts, and washers the subject device, during the years in issue, was used primarily for automotive purposes in connection with the installation of mufflers and tailpipes.

---

* The concurring opinion of Nichols, *Judge,* appears at the conclusion of the opinion of the trial commissioner which has been adopted by the court.

Plaintiff's muffler clamp was derived from a design patented by Oliver Crosby in 1888. The Crosby clamp was originally designed as a cable clamp, and it is still manufactured and so used today. Although such a cable clamp can be used to attach an automobile muffler to an exhaust pipe or tailpipe, it is not so used because it is much heavier and more expensive than a standard automotive muffler clamp.

Since the invention of the Crosby cable clamp the same principle has been adapted by redesign to a variety of specialized uses. No one type of clamp has such universal application, however, that superior performance cannot be obtained from a specialized clamp employing the same underlying principle. In each case the original principle of the Crosby clamp has been modified and redesigned to suit the peculiar needs of each separate form of use. Whereas plaintiff's muffler clamp is ideally designed for use in connection with an automobile exhaust assembly, it is not ideally designed for other uses for which clamps similar in principle but different in style are specially designed.

The muffler clamp manufactured and sold by plaintiff is similar in design, material used, and weight to the assemblies manufactured and sold as muffler clamps by plaintiff's competitors. Unlike its competitors, however, plaintiff places a hole in the center of the saddle piece of its product. This hole serves a dual automotive function in that it facilitates the suspension of an automobile exhaust assembly, and it effects a better seal in connecting the exhaust components. The hole also serves certain nonautomotive functions of a fastening nature, but these are of little significance due to the minimal quantity of plaintiff's nonautomotive sales.

During the period in issue plaintiff was listed in the Thomas Registry as a manufacturer under various headings, both automotive and nonautomotive. The customers to whom plaintiff sold its muffler clamps during this same period, however, were primarily manufacturer-distributors of automobile parts. Plaintiff's sales to Maremont Corporation, a manufacturer and seller of mufflers and muffler clamps, accounted for approximately 83 percent of the excise taxes involved in this suit. As part of Maremont's marketing program, plaintiff packaged the muffler clamp in a carton which described the product as a "Full Circle Muffler Clamp"; directions for installation were on the carton. Maremont sold the packaged muffler clamps with its mufflers.

Plaintiff failed to pay manufacturers' excise taxes on the muffler clamps which it sold during 1958, 1959, and 1960. Pursuant to assessment of the deficiency against it, plaintiff paid excise taxes in the amount of $49,125.53, plus interest thereon of $8,275.86 on August 13, 1962. Plaintiff's timely claim for refund was disallowed on June 19, 1963, and this action was commenced on June 15, 1965, seeking recovery of the taxes and interest paid. Plaintiff has withdrawn its claim to the extent of 2½ percent, constituting the tax and interest on sales of another product known as fifth wheel U–bolt kits.

Section 4061(b), during the years in issue, imposed an excise tax of 8 percent on parts or accessories for certain vehicles, including automobiles, enumerated in section 4061(a). Although the Internal Revenue Code of 1954 contained no definition of the term "parts or accessories", Treasury Regulation § 40.-4061(b)–2(a) provided the following in pertinent part:

(a) *In general.* The term "parts or accessories" includes (1) any article, the *primary use* of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article *designed* to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article, the *primary use* of which

is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. * * * (Emphasis supplied.)

Plaintiff contends that the product in issue is a simple fastening device and, as such, is not taxable as an automobile part or accessory because (1) it is not "primarily adapted" (meaning "primarily designed") for automotive use, and (2) it is "similar to" the nontaxable articles enumerated in Treasury Regulation § 40.4061(b)–2(b). The Government responds that the product is taxable as an automotive part or accessory because it is primarily used to replace or serve as a component part of automobiles and/or in connection with automobile chassis in an essential function. Defendant also asserts that the subject device is designed and adapted to its primary automotive use, notwithstanding the possibility of infrequent nonautomotive use.

## I

### THE DEFINITIONAL ISSUE

■ The initial disagreement between the parties centers largely on whether the "parts or accessories" classification is properly determined by a "primary design" test as suggested by plaintiff, or by a "primary use" test as suggested by defendant. The basis upon which the Government's position is predicated is readily apparent from the Treasury Regulation § 40.4061(b)–2(a) excerpt set forth above. That is, the Regulation expressly adopts a "primary use" test, which test is clearly satisfied by the near-exclusive use of the disputed muffler clamp on automobiles. The rationale underlying plaintiff's position is not so readily apparent, however, because it focuses mainly upon a predecessor of the current section 4061, and regulations and decisions thereunder.

The excise tax on automobile parts and accessories originated with the Revenue Act of 1918, and continued without significant change until the Revenue Act of 1932. The Treasury Regulations adopted pursuant to the 1918 Act, and effective also without significant change until the 1932 Act, provided in pertinent part:[1]

Art. 15. *Definition of parts.*—A "part" for an automobile * * * is any article *designed or manufactured for the special purpose* of being used as or to replace a component part of any such vehicle and which by reason of some peculiar characteristic is not such a commercial commodity as would ordinarily be sold for general use and which is *primarily adapted only* for use as a component part of such vehicle. (Emphasis supplied.)

\* \* \* \* \* \*

Art. 16. *Definition of accessories.*— An "accessory" for an automobile * * * is any article *designed* to be attached to or used in connection with such vehicle to add to its utility or ornamentation and which is primarily adapted for use in connection with such vehicle, whether or not essential to its operation. (Emphasis supplied.)

In 1930 the Supreme Court decided the landmark case of Universal Battery v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930), wherein the above-quoted regulatory definition of "parts" and "accessories" was approved. In upholding the validity of the regulation, the Court said at pages 583–584, 50 S.Ct. at page 423:

This [the regulation's] construction of those terms has been adhered to in the Internal Revenue Bureau for about ten years, and it ought not to be disturbed now unless it be plainly wrong. We think it is not so, but is an admissible construction. * * * It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted.

---

1. Treasury Regulation 47 (Revenue Act of 1918).

It is not entirely clear from the opinion, however, that the Court's use of the term "adapted" was intended to mean "designed" only, or that the "primarily adapted" standard was restricted to a *design concept*. On the contrary, the terminology used in the opinion indicates a reasonable construction of "adapted" to be "altered" or "suited", and strongly invoked a concomitant *use concept*. The flexibility of interpretation attributable to the pivotal terms is evidenced by the Court's remarks at pages 583–584, 50 S.Ct. at page 423:

> * * * Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses *and commonly put to such uses,* one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles *and are exclusively so used.* (Emphasis supplied.)

That an article need not have been primarily designed for automotive use as a prerequisite to classification as a part or accessory was emphasized by this court shortly after Universal Battery. In Fairmount Tool Co. v. United States, 42 F.2d 591, 594, 70 Ct.Cl. 425, 432 (1930), after holding a tool kit to be taxable as an automotive accessory, the court stressed:

> * * * The fact that tools of this design, functioning as these tools do, were manufactured prior to the advent of the automobile, and *are not now, nor never were,* especially designed for use on an automobile, is not in and of itself determinative. (Emphasis supplied.)

To the same effect, see Bassick Manufacturing Co. v. United States, 44 F.2d 278, 70 Ct.Cl. 467 (1930).

But perhaps the most explicit commentary regarding the relationship between design, adaptation, use, and "part or accessory" classification is found in Anthony Co. v. United States, 56 F.2d 481, 482, 73 Ct.Cl. 758, 764–765 (1932), wherein we stated:

> * * * Where the article in question was made before the advent of automobiles, and the article taxed is similar in design and principle without any substantial change, this may be said to show that the article was not primarily designed for use upon automobiles, *but this alone is not sufficient if it further appears that the article is in fact used upon or in connection with automobiles; for, although not primarily designed for that purpose, it may have been in some way specially adapted to be so used.* * * *

> * * * If the article was "equally adapted" for a variety of uses, obviously it could not be "specially adapted" for use upon automobiles. Therefore a finding that the article was "equally adapted" for other uses, *and is commonly so used,* is equivalent to a finding that it was not "specially adapted" for use on automobiles.

On the other hand, where it is found that the article in question was *so advertised or sold* as to amount to a claim on the part of the manufacturers that it was specially adapted for automobiles in general, or for some particular make of automobile, and *there is no evidence to the contrary,* it has been held subject to the tax. (Emphasis supplied.)

The first significant modification of the excise tax provisions under review was effected by the Revenue Act of 1932, wherein certain enumerated articles were declared taxable as parts or accessories if suitable for use on automobiles, whether or not "primarily adapted" for such use. The congressional purpose underlying the modification was expressed in the report of the Senate Committee on Finance, which stated:

> * * * The House bill contained a provision, which is retained by your committee, to eliminate the effect of certain court decisions under which many parts and accessories have escaped tax under prior revenue acts

on the ground that they were not "primarily adapted" for use on automobiles or trucks, since they might be used on boats, tractors, etc. Under the bill, spark plugs, storage batteries, leaf springs, coils, timers, and tire chains, *if suitable for use* on automobiles and trucks, will be taxable as parts or accessories whether or not "primarily adapted" for such use. As to other parts and accessories, the test of taxability will be the same as under the prior laws, since those enumerated represent the principal items as to which question has arisen, and to extend the list would result in the inclusion of *articles whose use on automobiles and trucks may be minor as compared with their other uses.* (Emphasis supplied.) S.Rep. No. 665, 72d Cong., 1st Sess., 44 (1932).

It is clear from the above language that Congress was concerned about the escape from taxation by certain articles of a generally automotive nature which, though adapted for both automotive and nonautomotive use, could not be properly described as *"primarily* adapted" for automotive use. As to the most recurrent of these articles, Congress substituted the far less stringent "if suitable for automotive use" test, a test which bears no relationship to actual use. More important, however, is the congressional intent underlying the abbreviated nature of the new classification; that is, articles experiencing only minor automotive use ought not be included in the new classification. Since taxation of the enumerated articles in the new classification depended upon mere suitability for automotive use, and any additional articles were excluded on the basis of minor automotive use, the inference is fully justified that articles *primarily* used for automotive purposes necessarily are subject to taxation.

Pursuant to the 1932 Act, and consistent with the inference drawn above, Treasury Regulation § 40.4061(b)–2(a), *supra,* was promulgated. This Treasury Regulation, which expressly adopted the "primary use" test as the touchstone of taxability remained in effect without significant change until the excise tax on automobile parts and accessories was repealed effective January 1, 1966. Reliance upon a use concept, which had been only implicit in the principal cases decided prior to the 1932 Treasury Regulation (Fairmount Tool Co. v. United States, *supra;* Bassick Mfg. Co. v. United States, *supra;* Anthony Co. v. United States, *supra*), became explicit in the post-1932 decisions. See Van Norman Industries, Inc., v. United States, 361 F.2d 992, 176 Ct.Cl. 16 (1966), cert. denied, 386 U.S. 981, 87 S.Ct. 1285, 18 L.Ed.2d 229 (1967); Rose-Derry Co. v. United States, 243 F.Supp. 26 (D.Mass., 1965); Crown Products Co. v. United States, 239 F.Supp. 1009 (D.C.Neb.1965).

■ In the present suit, there can be no doubt that plaintiff's muffler clamp is a "part or accessory" as defined in Treasury Regulation § 40.4061(b)–2(a). Indeed, plaintiff never directly challenges the applicability of the Regulation, but rather disputes in an oblique manner the standard contained therein. The record clearly reveals that during the years in issue the subject device manufactured and sold by plaintiff was primarily used for automotive purposes, with distinctly minor actual use proven in nonautomotive fields. Accordingly, it is concluded that the muffler clamp in issue is taxable as a "part or accessory" for an automobile under section 4061(b) of the 1954 Code.

It is noteworthy that the identical result obtains under the "primarily adapted" standard prevalent in the pre-1932 Treasury Regulations and cases, and relied upon here by plaintiff.[2] Albeit

---

**2.** It should be noted that the term "primarily adapted", relied upon in the pre-1932 Treasury Regulations and in the *Universal Battery* opinion, does not ap-

pear in Treasury Regulation § 40.4061 (b)–2(a). Nevertheless, the term has frequently been used in post-1932 decisions interchangeably with, or to com-

the original Crosby clamp predated the advent of the automobile, the muffler clamp now under consideration is a lighter, less expensive, differently designed and functionally distinct modification of the original. Thus, although the cable clamp progenitor of the muffler clamp in issue obviously was not *originally* designed for automotive use, it is clear that plaintiff's product is *now* primarily adapted—i. e., redesigned, altered, or made suitable—principally for use in connection with the installation of mufflers on automobiles.

## II

### THE SIMILAR ARTICLES ISSUE

In 1959 the Internal Revenue Service amended Treasury Regulation § 40.4061 (b)–2 by adding, *inter alia,* provisions containing examples of taxable and non-taxable articles as follows:

(b) *Articles of a general use.*—The term "parts or accessories" does not include articles which are *not used primarily* in the manufacture of automobile trucks, other automobiles, or tractors, but have a general use in the manufacture of various articles. For example, commodities such as ball and roller bearings, bolts, nuts, washers, screws, nails, tacks, rivets, pins, studs, cotters, pipe fittings such as plugs, tees, ells, and elbows, drain cocks, grease cups, oilers, *and similar articles* are not of themselves parts or accessories. * * *. (Emphasis supplied.)

\* \* \* \* \* \*

(d) *Examples of articles taxable as parts or accessories.*—Examples of articles which are taxable as parts or accessories are: automobile air conditioners, baby seats for automobiles, automobile beds, automobile hammocks, automobile clutches, bottle warmers and heating pads designed to operate from an automobile cigarette lighter, automobile radio antennae, automobile license plate frames, automobile clocks, automobile mirrors and mirror brackets, purses for carrying parking meter coins or cases for carrying registration cards when designed for attachment to an automobile; safes primarily designed for use in taxable motor vehicles; electric bulbs primarily designed and adapted for use on automobiles, automobile floor mats, jacks of the mechanical or hydraulic bumper, screw, ratchet, scissors, or other type primarily designed to be carried as accessories in automobiles as distinguished from jacks designed especially for use in garages and repair shops; dollies of the type commonly known as converter dollies which are used as connecters to convert semi-trailers to full trailers; tool kits recommended for use with automobiles, automobile seat covers of any construction whether they are ready-made or custom fitted, and fitted truck top covers.

Plaintiff's alternative ground for recovery is that the muffler clamp which it manufactured and sold is not taxable as an automotive part or accessory based upon the "similar articles" language contained in paragraph 2(b) of the above-quoted Treasury Regulation. Plaintiff perceives as a basic distinction between the two example provisions that the non-taxable articles in paragraph 2(b) include several fastening devices, while the taxable articles in paragraph 2(d) include no fastening devices. Accordingly, plaintiff's position is that its product is not subject to the manufacturers' excise tax because, as a simple fastening device, it is "similar to" various examples of nontaxable articles in paragraph 2(b). Plaintiff's position is not well taken.

The obvious purpose of these provisions is to demonstrate with concrete

---

plement, the regulatory "primarily used" standard. Although this practice often beclouds the regulatory standard, it doubtless arises from a judicial determination that an article primarily used for a particular purpose necessarily is primarily adapted for such use. See International Mfg. Co. v. United States, 382 F.2d 307, 180 Ct.Cl. 1196 (1967).

examples the classification of particular articles by application of the appropriate regulatory definition. The critical distinction between the two example provisions is that the taxable articles listed in paragraph 2(d) are primarily adapted and primarily used for automotive purposes, while the nontaxable articles listed in paragraph 2(b) are equally adapted and commonly used for nonautomotive purposes. This critical distinction, which is dispositive of the issue under review, cannot be obscured by the fact that several of the articles listed in paragraph 2(b) perform a fastening function as does plaintiff's product.

The record in the present case strongly supports the conclusion that plaintiff's muffler clamp is designed, adapted, manufactured, sold and used primarily for automotive purposes. Consequently, it is not one of the nontaxable "similar articles" excluded from classification as an automotive part or accessory by Treasury Regulation § 40.4061(b)–2(b).

NICHOLS, Judge (concurring):

I agree with the commissioner's opinion, findings, and conclusion of law. I shall never cease to marvel at the omission of tax lawyers to cite customs decisions on interpretation of the excise taxes, and vice versa, Cf. Gallagher & Ascher Co. v. United States, 52 CCPA 11, C.A.D. 849 (1964). Unless one knew, one would never guess that the two groups of laws were drafted by the same Congressional committees, enacted by the same Congress, administered by the same Department, and require classification of many of the same items of merchandise. There are other examples of the compartmentation of the modern legal mind, but a more splendid and shining one would be hard to discover. I favor a practice, while working in each field, of glancing aside at decisions in the other, even though one might end up not following them, as in Select Tire Salvage Co., Inc. v. United States, 386 F.2d 1008, 181 Ct.Cl. 695 (1967). We held there than an imported tire carcass was not a "tire" under the excise laws though it would be a "tire" under the customs laws. Here, I find nothing to raise a challenge with. The "parts and accessories" of the excise laws are apparently more inclusive than the parallel tariff provisions which, as in Gallager & Ascher, supra, require a nice and difficult distinction between a part and an accessory.

1. Plaintiff is a Michigan corporation with its principal office and place of business in Fort Loramie, Ohio.

2. Since 1945 and during the taxable years in issue (1958, 1959 and 1960), plaintiff manufactured and sold, inter alia, a fastening device commonly known and advertised in automotive circles as a muffler clamp. Plaintiff in this litigation objects to such designation principally because the basic device was originally designed for nonautomotive uses and, while in the automotive era it has been predominately used for automotive purposes in connection with installation of mufflers and tailpipes, it is usable and used for other nonautomotive purposes. However, for purposes of convenience it will hereafter be referred to usually as a muffler clamp without necessarily inferring by that designation that the device is not adapted to some nonautomotive uses of a secondary nature.

3. This action was commenced to recover manufacturers' excise taxes in the amount of $49,125.53, plus interest, imposed upon plaintiff's sales of muffler clamps and fifth wheel U-bolt kits which it manufactured and sold during the taxable years. Plaintiff paid assessed excise taxes in the stated amount plus interest in the amount of $8,275.86 on August 13, 1962. Plaintiff's timely claim for refund was disallowed on June 19, 1963, and this action was commenced on June 15, 1965, seeking recovery of the taxes and interest paid. Plaintiff has withdrawn its claim to the extent of 2½ percent, constituting the tax and interest on sales of fifth wheel U-bolt kits, leaving in issue the sum of $47,897.39 in excise taxes and interest imposed on sales of muffler clamps as parts or accessories

for an automobile under section 4061 of the Internal Revenue Code of 1954.

4. The muffler clamp which plaintiff manufactured and sold to automotive customers consisted of a U-bolt, a clamp or "saddle", two nuts, and washers. The U-bolt is heavy-gauge wire formed in the shape of a "U" and threaded at each end. The part referred to as a saddle is a straight line. The top line of the saddle is an arc, which is designed so that when the saddle and the U-bolt are combined they close to form a circle. The saddle is a three-sided piece, that is, it has two sides perpendicular to the base. The base of the saddle manufactured by plaintiff has three holes. The holes at each end accommodate the legs of the U-bolt so that the saddle and the U-bolt may be fitted around cylindrical or quasi-cylindrical objects (such as tailpipes, exhaust pipes, steel fence posts, etc.) and fastened by means of nuts and washers. The third hole is in the center of the saddle piece. The assembly constitutes a simple fastening and/or sealing device, and has occasional uses as a hanger for the tailpipe.

5. The U-bolt and saddle fastening device, of which plaintiff's is a common specie, utilizes a principle which has been long known and widely used in the engineering world for a variety of fastening purposes. A fastener is defined as a device for holding two or more bodies in a definite position with respect to one another. The device derives from a design patented by Oliver Crosby in 1888 which has been used extensively and continuously since then as a clamp for wire ropes and cables. The Crosby clamp is still manufactured and used as a cable clamp. While such a cable clamp can be used to attach an automobile muffler to an exhaust pipe or tailpipe, it is made of cast metal for added strength, is much heavier and more expensive than a standard automotive muffler clamp, and, therefore, is not practical for use as a muffler clamp, nor is it so used. Plaintiff's muffler clamp or its competitive equivalent is not generally used for clamping wire rope or cable, for safety reasons.

6. The principle of the U-bolt and saddle clamp did not have a single form of universal application during the tax period in issue, but prior thereto had been modified or adapted to various uses. A variation of the U-bolt and saddle assembly is the U-bolt and strap assembly. Whereas the saddle has a single or double curved edge so that in conjunction with the U-bolt it will form a circle, the strap is simply a straight piece, which does not complete a circle. Devices employing the U-bolt and saddle, or strap, principle have been adapted (by design change or improvisation) in conjunction with television antennas, automobile exhaust assemblies, plumbing, heating and air-conditioning businesses, pipes and conduits in general, fence posts, wire ropes, and cables, hose clamps, highway sign posts, and for collateral clamping purposes such as upon the hubs of a tricycle and for anchoring a child's swing set. In such uses their general function is to clamp or hold two or more cylindrical or objects in a definite, stable position with relation to each other, either by holding them still or tightly together.

7. The exhaust system of an automobile, through which gaseous engine wastes are dispelled, consists in most automobiles of three parts, viz: the exhaust pipe from the engine to the muffler, the muffler itself, and finally the tailpipe which extends from the muffler to the rear of the car. These parts are connected by inserting the end of one pipe into the near end of the adjacent pipe and then sealing them together in some fashion so that they will be circumferentially snugtight and will prevent gas seepage. Since welding the joints is rather expensive, the sealing is commonly accomplished by the use of muffler clamps of the type in suit. The muffler clamp is also used in certain automobiles (foreign and vintage American) as a tailpipe hanger by connecting a flexible strap of cord or rubber to the saddle through a hole in the saddle, and then attaching it to the chassis so as to sus-

pend the tailpipe in a usually nonrigid position.

8. As described in finding 4, unlike its competitors, the plaintiff makes a hole in the center of the saddle piece of its muffler clamp. One function of the hole is to facilitate the suspension of an automobile exhaust assembly, or in non-automotive applications to hang pipes and conduits, permit the fastening of additional material, or threading with a bolt for more secure fastening as in fastening traffic signs to poles. Another automotive function of the hole in the saddle is that it tends to effect a better seal in connecting the exhaust components because the saddle can be bowed by using the pressure of an impact gun (instead of a ratchet). The hole in the saddle increases the utility of plaintiff's muffler clamp for all uses. The Supreme Manufacturing Company, a competitor of plaintiff, manufactures and sells a U-bolt and saddle clamp which is practically identical to the clamp manufactured and sold by plaintiff, with the exception that it does not have a hole in the middle of the saddle. Supreme's package in which the clamp is sold bears the labels "Heavy Duty Clamp" and "All-Purpose Clamp" and bears illustrations indicating that the clamp can be used on automobiles, television antennas, or in plumbing.

9. The clamps manufactured by plaintiff are more similar in design, material used, and weight to U-bolt and saddle assemblies manufactured and sold by plaintiff's competitors as muffler clamps than to clamps which are manufactured for such uses as cable clamps and television antenna clamps, and they are more versatile for collateral uses than the latter.

10. While plaintiff's muffler clamp can be and is used for television antenna installation, it is not as well-suited or adapted for that purpose as television antenna clamps which are especially designed therefor. Principally, in contrast to plaintiff's muffler clamps, the saddle of the television antenna clamp has a serrated edge which grips the antenna and prevents it from turning in the wind; the U-bolt portion of the television antenna clamp has longer legs in order to fit around two pieces of metal (i. e., the mast and the antenna); and it has a second strap or saddle piece which fits over the legs of the U-bolt.

11. While the type of muffler clamp sold by plaintiff has not been used to any proven extent by the plumbing, heating and air-conditioning businesses as a clamp and hanger, it would be satisfactory for such use if it met load and size requirements. It is similar in principle to a Clevis clamp which is customarily used as a clamp and hanger by those businesses. Plaintiff's general manager did not know whether plaintiff sold its clamps to plumbing supply houses, although he recalled sales of U-bolts to plumbing supply houses.

12. During the years in issue plaintiff was listed in the Thomas Registry as a manufacturer under the various headings, "Clamps", "U-bolts", "Clamps: Automotive", "Clamps: Special", and "Mufflers: Exhaust, Automobile, Gasoline Motor, etc." Plaintiff was described in the Thomas Registry as "Mfrs. of U-Bolts, Muffler Clamps, Stampings, etc.", and its products were described as "U-Bolt Type Muffler, Linkage Assemblies, etc.", "Accessories for U-Bolts, Strap Assemblies, etc.", "U-Bolt type", "Standard & Special Bolts & Assemblies", "U-Bolts, C-Clamps, Wire Products, etc." Some of these descriptions related to automotive uses in the Thomas Registry and some to nonautomotive. Whether the U-Bolts so sold were muffler clamp components does not appear.

13. Due largely to good business contacts of plaintiff corporation's founder, as well as the type of article, the customers to whom plaintiff sold its muffler clamps during the period in issue were primarily manufacturer-distributors of automobile parts. Its sales to Maremont Corporation (formerly Maremont Automotive Products, Inc.), which manufactures and sells mufflers and sells muffler clamps, accounted for approximately 83 percent of the excise tax in issue. Other automotive customers of plaintiff

were A. P. Parts Corporation and Mc-Cord Corporation, which companies were manufacturers and sellers of mufflers. Plaintiff had only a few customers in nonautomotive fields. As part of Maremont's marketing program, plaintiff put the U-bolt and saddle clamp in a package which said "Maremount" on it and referred to the product as a "Full Circle Muffler Clamp" with directions on the package for installation. Maremont sold the packaged muffler clamps with its mufflers. Plaintiff packaged the muffler clamps which it sold to its other automotive customers in a similar container which did not carry the name of the customer on them.

14. During the taxable period in issue plaintiff also sold its clamps in bulk, unassembled and not individually boxed, and sometimes in components or broken sets to nonautomotive customers in the television antenna, plumbing, and hardware supply businesses.[1] Such sales were not subjected to the excise tax. Plaintiff was unable to state what proportion of its total muffler clamps sales was for nonautomotive use, but conceded that sales were predominately for automotive use.

15. Since 1945 plaintiff has manufactured its U-bolt and saddle clamp in stock (i. e., standard) dimensions in the following sizes without reference to orders, so as to maintain predetermined levels of inventory:

| Diameter of the Object Surrounded (Inches) | Percentage of Sales (Percent) |
|---|---|
| 1½ | 5 |
| 1⅝ | 5 |
| 1¾ | 15 |
| 1⅞ | 15 |
| 2 | 40 |
| 2¼ | 5 |
| 2⅜ | 0.1 |
| 2¾ | 1 |
| 3 | 2 |
| 3⅛ | 0.6 |
| 3½ | 3 |
| 3⅝ | 0.2 |
| 4 | 3 |
| 4½ | 0.1 |

All of the eight foregoing sizes between 1½ inches and 2¾ inches, which constituted 86.1 percent of plaintiff's overall sales of clamps, contain a center hole in the saddle.

1. There is no record of the sales for non-automotive use, but it is believed that sales for television antenna use were *de minimis*, while the only sales which plaintiff's general manager could recall to plumbing supply houses were of U-bolts rather than the assembled clamp device, and there is no proof that the U-bolts sold to plumbing supply houses were components of the muffler clamp. The inference is that they may well have been U-bolts made by plaintiff which were unrelated to muffler clamps, especially since plaintiff advertised itself as a manufacturer of nonautomotive U-clamps. The sales to a hardware supply firm were estimated to total approximately $7,000 in each year of the years in issue, and these apparently were resold for use by the Texas Highway Department in attaching highway signs to posts. The $7,000 figure was not proven.

16. The plaintiff's style of muffler clamp is designed, adapted, manufactured, sold, and used predominately and primarily for automotive purposes, with distinctly minor actual use proven in nonautomotive fields where a variety of devices of specialized designs but employing the basic U-bolt and saddle principle are manufactured and sold for particular uses. Many of the nonautomotive uses of its muffler clamp cited by plaintiff amount to mere improvisations or are potential in nature.

17. Since the original design of the U-bolt and saddle clamp for wire and cable as exemplified in the Crosby patent in 1888 (finding 5, *supra*), the same principle has been adapted by redesign to a variety of specialized uses, such as on television antennas to fasten the antenna to the mast, in plumbing, heating and air conditioning as a hanger to support pipes and conduits, and in automobile exhaust systems to attach and seal the exhaust components. No one type of such clamp has universal application that is not bettered by a specialized clamp employing the same principle. In each case the original principle of the Crosby clamp has been modified and redesigned to adapt to the peculiar needs of each separate form of use. Whereas plaintiff's muffler clamp is ideally designed for an automobile exhaust assembly, it is not ideally designed for a wire and cable clamp or a television antenna clamp or a pipe and conduit hanger, but instead there are clamps similar in principle but different in style and engineering features which are especially designed for these other uses.

## CONCLUSION OF LAW

Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.