**EARL GLASS CO., Inc., a Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 319.**

United States District Court
D. Nevada.

July 20, 1961.

Edwin A. Adamson and Deaner, Butler & Adamson, Las Vegas, Nev., for plaintiff.

Howard W. Babcock, U. S. Atty. for District of Nevada, and Raymond E. Sutton, Asst. U. S. Atty. for District of Nevada, Las Vegas, Nev., Arthur L. Biggins, Attorney, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lyle M. Turner and Fred J. Neuland, Attorneys, Department of Justice, Washington, D. C., on the brief, for defendant.

ROSS, Chief Judge.

This is an action brought under 28 U.S.C. § 1346(a) (1), whereby plaintiff seeks to recover certain excise taxes which were allegedly erroneously or illegally assessed and collected by the defendant.

Plaintiff is engaged in a glass business in Las Vegas, Nevada. It purchases glass from manufacturers and distributors in certain cut sizes. When a customer places a specific order for glass, the plaintiff cuts the glass by use of a simple tool, grinds off any rough edges, and delivers the glass to the customer. Although

plaintiff sometimes installs the glass itself, it is only being taxed for those transactions wherein the customer does his own installation. The plaintiff does not store for future sale the glass which it cuts. Pursuant to 26 U.S.C. § 4061(b), the plaintiff was assessed taxes in the sum of $2,874.22. It paid said amount to defendant during the period from January 2, 1958 to April 30, 1959. At no time did plaintiff pass the tax on to its customers. On or about July 6, 1959, plaintiff filed with the District Director of Internal Revenue its claim for refund, stating its grounds therefor. Subsequently, the plaintiff received a notice of disallowance of its claim. This action ensued, and trial without a jury was had.

All parties agree that the prime issue before this Court is whether or not the plaintiff is a "manufacturer" of glass within the meaning of the Internal Revenue statute.

The government has labored mightily to demonstrate that plaintiff is a "manufacturer." For example, the government points out that the glass which plaintiff receives from its suppliers does not have a part number in the standard parts catalogue used by the glass business. Ergo, we are asked to conclude that the plaintiff is only dealing with a raw material and that by virtue of the process described above the plaintiff has created something new—automobile window glass. This says nothing, however, for it only implies what is an admitted fact, namely, that plaintiff does some limited work on the glass. It ignores the fact that when the glass is purchased by the plaintiff, it is only intended to be used for automobiles in the first place. More importantly, the government's "point" assumes the very question that is in issue here, namely, whether all work done on a piece of glass constitutes manufacturing.

There is no reason to suppose that the term "manufacture" was used in the instant statute in anything other than its ordinary and generally accepted manner. Reinecke v. Smith, 1933, 289 U.S. 172, 175, 53 S.Ct. 570, 77 L.Ed. 1109; Old Colony Railroad Co. v. Commissioner, 1932, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484; United States v. First National Bank, 1914, 234 U.S. 245, 258, 34 S.Ct. 846, 58 L.Ed. 1298. Under these circumstances, it would be appropriate to note some of the observations of the Supreme Court on the occasions when it has had to construe the term "manufacture."

In Hartranft v. Wiegmann, 1887, 121 U.S. 609, 614, 7 S.Ct. 1240, 1243, 30 L.Ed. 1012, the Court held that "the application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article" within the meaning of the tariff statutes. In Anheuser-Busch Brewing Ass'n v. United States, 1908, 207 U.S. 556, 562, 28 S.Ct. 204, 206, 52 L.Ed. 336, the Court pointed out that "manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary, * * *. There must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use.'" The statute involved in Anheuser-Busch was a tariff statute, but the logic of the Supreme Court is highly persuasive under the facts and statute involved herein. See also East Texas Motor Freight Lines, Inc. v. Frozen Food Express, 1956, 351 U.S. 49, 52–54, 76 S.Ct. 574, 576, 100 L.Ed. 917, where the Court observed that "killing, dressing, and freezing a chicken is certainly a change in the commodity," but, then, after citing and quoting from Anheuser-Busch, supra, tersely commented that a "chicken that has been killed and dressed is still a chicken," and not a manufactured commodity.

With these principles in mind, it is difficult to see how plaintiff's operations come within the concept of manufacturing, as that term is used in its ordinary sense.

We have carefully considered the cases cited in the defendant's brief. They are not in point, for they all were the so-called "seat cover cases," and the operations there involved were substantially

more complex than were present here. See, for example, Masao Hirasuna v. McKenney, 9 Cir., 1957, 245 F.2d 98, 99 (after the cloth was cut, the piping was sewn to the edges and the cut portions were sewn together); Campbell v. Brown, 5 Cir., 1957, 245 F.2d 662, 663–664 (same); United States v. Keeton, 4 Cir., 1956, 238 F.2d 878, 880 (same).

■ In concluding that the taxpayer was not engaged in manufacturing, we cite the following cases in support, all of which are precisely in point in that the plaintiff's operations here are virtually identical to those of the taxpayers in the cited cases. Kingsport Glass Co. v. United States, 59–1 U.S.Tax Cases 7005 (E.D.Tenn., 1958); Cotter v. Luckenbill, 55–2 U.S.Tax Cases 55,914 (S.D.Ill., 1955); Bacon & Van Buskirk Glass Co. v. Luckenbill, 55–1 U.S.Tax Cases 55,674 (S.D.Ill., 1955).

Quite aside from the authority which we have cited in support of our position, we would further point out that for some inexplicable reason the government has not sought to tax a glass company on transactions which involve its installing the cut glass. This means that the government has put itself in the untenable position of taxing, as being a manufacture, an operation that involves less work than the operation that it allows to go tax-free. Can it be that a part is greater than the whole?

We would be amiss, we think, in not pointing out our displeasure at the government's handling of these cases. Not being satisfied with three adverse rulings on the very point before us, the government has come to this District to further burden a small businessman by use of a tax statute. Having swung at the ball three times and missed on each occasion, one would think that the Treasury Department would have gone to Congress to see if that body would provide in clear, unambiguous terms for the revenue which is sought here. Of course, we realize that a taxing statute cannot be written which will cover every conceivable situation which may arise; but, that being true, then the courts at least have the right to ask for a statute or a Treasury regulation which will set forth some workable guidelines. Rather than favoring the courts with reasonably precise legislation, the government has asked us to do its work—to make law by judicial fiat. This, we unequivocally refuse to do.

■ This Court chooses to exercise the discretion given to it by 28 U.S.C. § 2412(b). Therefore, there will be taxed as costs against the defendant those costs "actually incurred for witnesses and fees paid to the clerk" after the time the government put into issue the plaintiff's right to recover. It is a pity that Congress has been so niggardly in its allowance of costs, for there is no reason why the plaintiff, by seeking to recover the government's ill-gotten gain, should have to lose money on the proposition. Given a free hand, this Court would even have imposed, by way of costs, reasonable attorney's fees. We are confident that had the situation been reversed, the government would seek to exact all possible costs. What's sauce for the goose is sauce for the gander; but, alas, the law just is not written that way.

The foregoing opinion shall be deemed to constitute findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

It is, therefore, ordered, adjudged and decreed, that plaintiff shall have judgment against the defendant in the principal sum of $2,874.22, together with interest as provided for by 28 U.S.C. § 2411(a) and all costs allowable by 28 U.S.C. § 2412(b).