**BINSWANGER GLASS COMPANY**

v.

**UNITED STATES of America.**

**BINSWANGER AND COMPANY OF ROCKY MOUNT**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 5429, 5430.**

United States District Court
E. D. Virginia,
Richmond Division.

Oct. 14, 1968.

LeRoy R. Cohen, Jr. and John F. Kelly, Richmond, Va., for plaintiff.

Daniel Penner, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

These cases involving common questions of law and fact were ordered consolidated and come before the Court on a stipulated set of facts.

Both plaintiffs are engaged in the business of selling glass and related products. During 1964 and 1965 in the

course of their respective businesses, each sold glass for replacement of automobile and truck windows and flat windshields. The glass used by them had been acquired from manufacturers in large rectangular sheets. Each sheet consisted of two adherent layers of glass held together by a plastic lamination, and each intended to be used only on motor vehicles.

As an order was received, a pattern for the particular make and model motor vehicle window was laid on the table and a sheet of glass, larger than the pattern, was laid over the pattern. A handcutting tool was then drawn rapidly over the line of the pattern and the glass then hit, resulting in a break at the top layer of the glass along the cut line. The glass was then turned over and the process repeated. Alcohol was then applied over the cut line and ignited in order to melt the plastic lamination along the line and complete the severance.

In the case of orders for more than a single piece of glass, the aforementioned melting was sometimes accomplished by placing the cut glass in a dry heat tank as a substitute for applying and igniting the alcohol.

The rough edges of the glass were then ground off on a diamond emery wheel or belt and the glass was then ready for installation, the whole process having taken approximately fifteen minutes.

Plaintiffs did not at any time during the period under consideration cut glass for motor vehicles and place it in stock or inventory. Some orders required plaintiffs to install the glass in the channels of the motor vehicles, while others called for delivery of the glass to the respective customers for installation by them.

It is stipulated that plaintiffs paid excise taxes on the sales of such glass during the years 1964 and 1965. This action is for the recovery of those taxes, none of which were included in the sales price of the glass with respect to which the same were imposed, nor was any part thereof collected from the purchasers of such glass.

The Court finds that Binswanger Glass Company in the year 1964 paid tax in the amount of $1134, and in 1965 in the amount of $1212.69, for a total of $2346.69; and Binswanger and Company of Rocky Mount paid tax in 1964 of $82, and in 1965 in the amount of $176.15, for a total of $258.15.

The issue is whether the respective plaintiffs engaged in the manufacture of automobile parts or accessories, for if they did then they are liable for the federal excise tax levied by § 4061(b) of the Internal Revenue Code of 1954 which imposed an 8% excise tax on the manufacture of parts or accessories for any of the articles enumerated in subsection 4061(a). The supplier from whom Binswanger buys glass does not pay an excise tax.

Plaintiffs make no contention that this glass prepared and sold by them are not "parts or accessories", which is one of the factors required under § 4061(b) in order for the product to be taxable. Hence, the only issue before the Court is whether or not the plaintiffs' cutting and delivery of motor vehicle glass constitutes an act of manufacturing.

The plaintiffs rely upon four cases which held that operations similar to the plaintiffs' in the instant case did not represent a taxable transaction.

The defendants, while admitting the cases are in point, argue that the cases apply only to pre-1964 situations, since apparently as per the suggestion of the learned Chief Judge of the United States District Court of Nevada in the case of Earl Glass Co., Inc. v. United States, 197 F.Supp. 707 (D.Nev.1961) in ruling that a similar operation was not a manufacturing process, stated "The courts at least have the right to ask for a statute or a Treasury regulation which will set forth some workable guidelines.". Thereafter, to-wit in April 1963, the Treasury Department promulgated new

regulations effective as of January 1, 1964,[1] in part as follows:

"(c)(2)—If in connection with an immediate installation in an automobile-truck, other automobile, or tractor, an article is produced through the use of special machinery or as the result of special skills from lengths or rolls of material, the person producing such article is considered to have manufactured an automobile part or accessory, and the tax applies to his sale of such part or accessory. For example, tax applies to the sale of automobile glass cut to size to replace broken glass, * * *"

"(d)—Examples of articles taxable as parts or accessories— * * * glass cut to size for installation in automobiles; * * *".

Each of the cases decided prior to the regulation which was effective as of January 1, 1964 uniformly held that the cutting of glass on a customer's order for an automobile window, followed by the installation of the glass in the customer's automobile, did not constitute a manufacturing process. See Earl Glass Co., Inc., supra; Kingsport Glass Co. v. United States, 59 USTC No. 15,204 (E. D.Tenn. 12/5/58); Cotter v. Luckenbill, 55–2 USTC No. 9,698 (S.D.Ill.1955); and Bacon & Van Buskirk Glass Co. v. Luckenbill, 55–1 USTC No. 49,124 (S.D. Ill.1955).

Defendants dismiss the aforementioned cases with their contention that they apply only to pre-1964 situations. Hence, the strength of the defendants' defense is their reliance upon the Treasury regulations.

Plaintiffs on the other hand rely strongly upon the four cases and, in addition thereto, argue that the Treasury regulations are (1) attempting to nullify the judicial construction of the statute given in the cases aforementioned, and (2) overturn the Treasury's prior long-standing administrative interpretation in reference to this particular statute.

For some time prior to 1964, by virtue of § 40.4061(b)–2(c) of the regulations which stated: "* * * When any such material (glass) is cut or otherwise transformed by any person into an automobile part or accessory, tax attaches at the time such part or accessory is sold by such person. However, the tax does not attach with respect to a part or accessory which is cut or transformed from such material pursuant to a customer's order in connection with an immediate repair job and installed by the person who cuts such material, inasmuch as the transaction is one involving principally labor and material rather than the sale of a part or accessory.", the Internal Revenue Service ruled that the cutting of glass to an automobile pattern, pursuant to an order for an immediate repair job, followed by installation by the person who cut the glass, was not a taxable transaction.[2]

Taking the issues as the Court sees them, any discussion in reference to the viability of the Treasury Department's regulation effective January 1, 1964, is secondary.

The court in the *Earl Glass Co.* case felt that the so-called "seat cover cases"[3], which had held that one who made automobile seat covers on special orders of customers who selected the material to be used from fabrics carried in stock was engaged in manufacturing, were not in point. The only reasons assigned by the learned trial judge were "that all were the so-called 'seat cover cases' and the operations there involved were substantially more complex than were present here."

1. §§ 48.4061(b)–(c) (2), and (d).

2. Internal Revenue Service ruling in ST 605, XI–2 C.B. 475 (1932), as modified by ST 928, 1943 C.B. 1147.

3. Masao Hirasuna v. McKenney, 9 Cir., 1957, 245 F.2d 98, 99 (after the cloth was cut, the piping was sewn to the edges and the cut portions were sewn together); Campbell v. Brown, 5 Cir. 1957, 245 F.2d 662, 663–64 (same); United States v. Keeton, 4 Cir., 1956, 238 F.2d 878, 880 (same).

The word "manufacture" finds its etymological source in the Latin ablative "manu", meaning "by hand", and "facere" meaning "to make"; hence, "to make by hand." It is apparent that this literal definition passed with the coming of the machine age and hence is too narrow for present use. As a result, even the standard dictionaries broaden the scope of its meaning.

In general, there appear to be three essential elements involved in manufacture: (1) original material, referred to as raw material; (2) a process whereby the raw material is changed; and (3) a resulting product which, by reason of being subjected to the processing, is different from the original raw material.

While in many early cases the term "raw material" was employed in the sense of material in its natural state, the term is now extended to cover materials that have already been subjected to some artificial processing. By "process" is meant the application of skill and labor causing a transformation or change in raw material. It is generally agreed that mere manipulation of the material is not sufficient and some degree of transformation is necessary. It is obvious that the change must not be merely a superficial manipulation, but must be a substantial, well-signalized transformation in form, quality and adaptability, resulting in the material being more valuable for man's use than it was prior thereto. It must be remembered, however, that while manufacture implies a change, every change does not result in a manufactured product, in spite of the fact that every change in an article is the result of treatment, labor and manipulation. See Anheuser-Busch Brewing Ass'n v. United States, 207 U.S. 556, 562, 28 S.Ct. 204, 52 L.Ed. 336 (1908). See also, Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L. Ed. 1012 (1886).

In the *Keeton* case, supra, a case decided by the Fourth Circuit Court of Appeals and one which this Court is duty bound to follow, the District Court held that the taxpayer did not sell a manufactured article, expressing disagreement with the contrary conclusion reached in similar factual circumstances in Masao Hirasuna v. McKenney, supra. The trial court had pointed out that three steps were necessary before the accessory becomes part of the car, i. e. (a) the raw materials; (b) the actual manufacture of the raw materials into a finished useful object; (c) the installation of this object. The Court of Appeals stated that in applying the aforementioned three step test, the trial court considered as raw materials those used in making the fabric, so that the bolt of fabric, which taxpayer purchased, constituted the manufactured object, i. e. "the accessory." The Court, speaking through Judge Fahy, expressed its disagreement in the statement that "while it is true the fabric had been manufactured independently, it became thereafter part of an additional manufacturing process leading to a finished seat cover."

In the instant case, while it is true that the glass had been produced independently, it became thereafter part of an additional manufacturing process leading to a finished automobile or truck window and/or a windshield.

■■ In applying the statute under consideration, the language must be accorded reasonable scope including different types of manufacture. The tax must not be so narrowly applied as to leave beyond its reach activities which are fairly within the intendment and language of the statute. See United States v. Keeton, supra. The Court must respectfully decline to follow the *Earl Glass Co.* case. The only reason assigned therein for the court's failure to follow the *Keeton* case was that the operations in the *Keeton* case were substantially more complex than in the case before it. This court cannot agree that complexity is the mark of manufacture; but to the contra feels that complexity is not the mark of manufacture.

■ Plaintiff contends that prior to the operation by their employees they have in hand "glass"; and when the op-

eration is concluded they likewise have in hand "glass". This argument is answered by the fact that one has in hand prior to the making of a suit, cloth, and after the cloth has been cut and sewn, a suit, still cloth. Yet no one would argue but that one who took the cloth and transformed it into a suit had been engaged in manufacturing. Unquestionably a new and different article emerged from the rectangular glass sheets which the plaintiffs used as the raw material in their manufacturing process.

It is apparent from what the Court has heretofore stated that the viability of the Treasury regulations is not in issue. Suffice it to say the Court finds that the regulations apply only to the traditional concepts of manufacture and constitute a reasonable interpretation of the statute under discussion.

For the reasons expressed in this memorandum, which is to be treated as the Court's findings of fact and conclusions of law as required by the federal rules of civil procedure, judgment will be entered for the defendant.