**BURRUSS LAND AND LUMBER COMPANY, Incorporated, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 71–1194.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1971.

Decided Feb. 22, 1972.

Thomas L. Stapleton, Atty., Tax Div., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Stephen H. Hutzelman, Attys., Tax Div., Dept. of Justice, and Leigh B. Hames, Jr., U. S. Atty., on brief), for appellant.

T. Neal Combs, Washington, D. C. (George D. Webster, and Marmet & Webster, Washington, D. C., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, RUSSELL, Circuit Judge, and DUPREE, District Judge.

BOREMAN, Senior Circuit Judge:

This appeal presents the question whether sales of laminated boards, developed, advertised and marketed as flooring for motor vehicle trucks and trailers by Burruss Land and Lumber Company (hereafter Burruss or taxpayer) were subject to the manufacturer's

excise tax imposed by Title 26 U.S.C. (I.R.C.1954 [1]) § 4061(b).[2]

## I.

Burruss has its principal place of business in Lynchburg, Virginia, and has other plants in Brookneal and Dillwyn, Virginia. Prior to 1955 Burruss used lumber from its 80,000 acres of Virginia timber land principally for pine framing, industrial lumber and house flooring. In 1955, after consulting with representatives of Fruehauf Trailer Corporation of Detroit, Michigan, and other trucking concerns, Burruss began the development of a new product, "laminated boards" for motor vehicle trailer and semi-trailer truck flooring. In the next few years Burruss established four production lines for these laminated boards in certain of its plants at a cost in excess of $1,000,-000.

Burruss produces its laminated boards in the following manner. Narrow strips of wood are ripped to a desired thickness, the sawn strips are then end dressed,[3] spread with glue, and placed on a conveyor belt. The dressed strips are then electronically glued together by machine and laminated "vertical grain" planks of varying lengths, widths, and thicknesses result.

Burruss marketed its product during the period 1956–1963 as "Burruss Brand Laminated Truck Flooring," [4] representing that it was "tailored to fit your dimensions" and was "ready to use" with "no waste"; plainly, the taxpayer stressed the ease of installation of its product.[5]

In orders placed with Burruss by telephone, order form or letter, customers usually specified the dimensions or number of square feet of the truck floor area to be covered and the thickness of the flooring ordered; [6] some orders included drawings indicating the shape and dimensions of the truck's interior in which the flooring was to be installed. There is evidence in the record that over 95 percent of Burruss' sales of laminated flooring were made to trucking firms such as Fruehauf Trailer Corporation and other companies that specialized in the manufacture or repair of truck bodies.

Burruss filed no excise tax returns with respect to its assertedly taxable sales of laminated boards between 1956 and 1963. Subsequently, the Internal Revenue Service determined that Burruss' sales of this product in all four quarters of 1956 were subject to the excise tax prescribed by section 4061(b)

1. All code sections hereafter referred to are part of the Internal Revenue Code of 1954 unless otherwise specified.

2. 26 U.S.C. (I.R.C.1954) § 4061(b) reads in pertinent part:
   (b) *Parts and Accessories.—*
   . . . [T]here is hereby imposed upon parts or accessories (other than tires and inner tubes and other than automobile radio and television receiving sets) *for any of the articles enumerated in subsection (a) (1)* sold by the manufacturer, producer, or importer a tax equivalent to 8 percent . . . . (Emphasis added.)
   Among the articles enumerated in section 4061(a) (1) is "automobile truck bodies."

3. "Dressing" is a process resulting in the removal of the rough surface of the wood through the use of a saw or planer.

4. The taxpayer advertised its "Burruss Brand Laminated Truck Flooring" in sales brochures and in publications such as

Transport Topics, Virginia Trucks and Tarheel Wheels. Mr. Gilley, taxpayer's Secretary-Treasurer, could recall no other publications wherein ads were placed. Attached to this opinion as Exhibits 1–A and 1–B are xerox copies of both sides of a brochure which brochure was a part of the record by stipulation. Exhibits 1–A and B show the representations of Burruss with respect to the use and adaptability of its product.

5. It is clear from the record that a "tailored" truck floor when shipped by Burruss could be installed in a particular truck with a few minor alterations; it was necessary that the installer drill holes in the boards to facilitate attachment to the truck body.

6. A typical order stated:
   We would like to place an order for laminated oak tongue and groove floor for truck body. The body size is 12' x 8', we would like it to be 1¼" x 12". [1¼" thick and 12" wide].

and, additionally, that taxpayer was liable for the penalties imposed by section 6651(a) for its failure to file an excise tax return for 1956 and by section 6656 (a) for its failure to make the required deposit of excise taxes in that year.

Burruss paid the excise taxes and penalties assessed with respect to the year 1956 and instituted suit on February 17, 1967, for the recovery thereof in the district court. The United States sought by counterclaim to collect the excise tax, penalties and interest with respect to Burruss' sales of laminated truck flooring for the 28 quarters from January 1, 1957, through December 31, 1963. On a stipulation of facts, the deposition of James M. Gilley [7] and the briefs filed by the parties, the district court, 318 F. Supp. 360, held that sales of the taxpayer's product were not subject to the excise tax imposed by section 4061(b). Implicit in this decision was the determination that since Burruss was not liable for the excise tax it was not liable for the prescribed penalties and interest. The United States has appealed. We reverse, having concluded that Burruss' product was subject to the excise tax prescribed by section 4061(b), and we remand to the district court to determine whether Burruss is subject to the penalties provided in sections 6651(a) and 6656(a).

## II

Clearly, taxpayer's sales of laminated boards were subject to the excise tax if that product was a truck "part or accessory" within the purview of section 4061(b) at the time of such sales and if taxpayer was the manufacturer. The parties disagree as to whether the classification of "parts or accessories" is properly determined by applying the "primarily *adapted*" test or the "primarily *used*" test. Neither section 4061(b) nor its predecessors [8] define "parts or accessories"; accordingly, an analysis of the applicable regulation, its basic predecessor and relevant decisional law is appropriate in order to reach a conclusion as to the proper test to be used in determining the scope of the statutory phrase "part or accessory," *i. e.*, its applicability or lack thereof, to "Burruss Brand Laminated Truck Flooring." [9]

7. James M. Gilley has been the Secretary-Treasurer of Burruss since its organization in 1953. He was responsible for filing all the corporation's tax returns from 1956 through 1963.

8. The excise tax now imposed by section 4061(b) was first enacted into law in Title IX (Section 900) of the Revenue Act of 1918, c. 18, 40 Stat. 1057. It was reenacted without substantial change in section 900 of the Revenue Act of 1921, c. 136, 42 Stat. 227, and in section 600 of the Revenue Act of 1924, c. 234, 43 Stat. 253. Section 600 of the Revenue Act of 1926, c. 27, 44 Stat. 9, continued the tax on automobile chassis and bodies, motorcycles and related parts and accessories but repealed the tax on automobile truck chassis and bodies, automobile wagon chassis and bodies and tractors. Section 421 of the Revenue Act of 1928, c. 852, 45 Stat. 791, repealed even the tax retained by the 1926 Act. The tax on motor vehicles and their parts and accessories was reimposed by section 606 of the Revenue Act of 1932, c. 209, 47 Stat. 169. Subsequently, section 606(c) of the 1932 Act was carried forward into section 3403(c) of the Internal Revenue Code of 1939, which, in turn, was carried forward into sections 4061(b) and 4062(a) of the 1954 Code without change.

9. The Government urges our consideration of the more recent Rev.Rul. 65–261, 1964–2 C.B., but Burruss attacks it, claiming that it is, *inter alia*, ambiguous. Rev.Rul. 64–261 sets forth three situations involving the sale of laminated lumber; the Internal Revenue Service ruled that the first two situations contemplated the sale of a non-taxable article of general use, but that the third situation contemplated the sale of a taxable part or accessory. The three situations are as follows:

Situation 1. An order of flooring planks consisting of individual planks of the same length is sold to a purchaser who subsequently cuts the planks as needed for use in particular bodies.

Situation 2. An order of flooring planks is sold to a purchaser for a specific number of bodies. The order consists of flooring planks of various sizes which must be cut and otherwise altered by the purchaser before being used in particular bodies.

Situation 3. An order of flooring planks is sold to a purchaser who has furnished

Treasury Regulation 47, Arts. 15 and 16, the basic predecessor of the regulation here applicable, 1954 Treasury Regulation on Manufacturers and Retailers Excise Tax § 40.4061(b)–2(a), was adopted pursuant to the Revenue Act of 1918, was effective without significant change until the Revenue Act of 1932 (excepting the period when the Revenue Acts of 1926 and 1928 were in effect as explained in footnote 8) and provided in relevant part:

Art. 15. Definition of parts.—A "part" for an automobile, truck . . is any article *designed* or manufactured for the special purpose of being used as or to replace a component part of any such vehicle and which by reason of some peculiar characteristic is not such a commercial commodity as would ordinarily be sold for general use and which is primarily *adapted* only for use as a component part of such vehicle. [Emphasis added.]

Art. 16. Definition of accessories.— An "accessory" for an automobile, truck . . . is any article designed to be attached to or used in connection with such vehicle to add to its utility or ornamentation and which is *primarily adapted* for use in connection with such vehicle, whether or not essential to its operation. [Emphasis added.]

The validity of the definitions in Treasury Regulation 47 was upheld by the Supreme Court in Universal Battery v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930). At pages 583–584, 50 S.Ct. page 423 the Court stated:

[A]rticles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted.

As we interpret Universal Battery v. United States, *supra*, the Court concluded that the test under Treasury Regulation 47 was whether the articles were *primarily adapted* in terms of convenience and practicality for use in motor vehicles. Additionally, the Court appears to have suggested that the fact that articles were *most often used* in motor vehicles was an indication that they were primarily adapted for that purpose.

Subsequent to the *Universal Battery* decision there were clear and explicit rulings, in cases wherein Articles 15 and 16 of Treasury Regulation 47 were involved, that the use to which a product was most often put was not, in and of itself, determinative as to whether the product was a motor vehicle part or accessory. Durkee-Atwood Co. v. Willcuts, 83 F.2d 995 (8 Cir. 1936); McCaughn v. Electric Storage Battery Co., 63 F.2d 715 (3 Cir. 1933). In *Durkee-Atwood Co.*, the Eighth Circuit held:

The fact that the belts were used to a greater extent on automobiles or automobile trucks does not prove that they were primarily adapted for use

to the company a blueprint of a particular type of taxable automobile truck body. The contract of sale specifies that the flooring is to be milled, cut, etc., to the exact design and dimensions specified in the blueprint for use in that type of body. For example, a contract of sale may cover the exact number and kind of planks milled, cut, etc., for ten automobile bodies.

Situation 2 provides that further cutting will be performed by the customer, while Situation 3 does not so provide. Situation 2 does not describe the degree of cutting necessary before an order should be held to be within its purview. Concomitantly, there is no indication in Situation 3 as to whether it would apply to an order requiring insignificant alterations or cutting such as might be logically anticipated. Further, Situation 3 calls for a blueprint which factor is pertinent since none of the representative orders in evidence contains a blueprint. The Government argues that the ruling was not meant to *literally* require a blueprint but Burress contends, equally persuasively, that it does so *facially*. It appears that the meaning of Rev.Rul. 64–261 is ambiguous and uncertain; consequently, consideration of the ruling is not helpful and, fortunately, is unnecessary to the resolution of the question here presented.

on automobiles and trucks, within the Revenue Act. . . .

As has already been observed, the test is not as to the volume of sales, but, rather, the fitness and the special adaptability of the article for purposes other than for automobiles and automobile trucks. 83 F.2d at 997–998.

The test under Treasury Regulation § 40.4061(b)–2(a),[10] a more detailed version of Treasury Regulation 46 (Revenue Act of 1932) which was the immediate successor to Treasury Regulation 47, is mainly whether the "primary use" of a product is (1) to improve, repair, replace, or serve as a component part of a motor vehicle or is (2) in connection with an automobile chassis or body whether or not essential to its operation or use. In most cases the phrase "primary use" has been held to have a meaning substantially identical with the phrase "primarily adapted" as it appears in Treasury Regulation 47; thus, whether an article is most practically and conveniently adapted as a motor vehicle accessory or part has been found decisive. International Manufacturing Company v. United States, 382 F.2d 307, 180 Ct.Cl. 1196

(1967); Masterbilt Products Corporation v. United States, 42 F.Supp. 294, 95 Ct.Cl. 451 (1942); Crown Products Co. v. United States, 239 F.Supp. 1009 (D. Neb.1965); Rose-Derry Co. v. United States, 243 F.Supp. 26 (D.Mass.1965). *See, contra,* Marwil Products v. United States, 418 F.2d 1345, 190 Ct.Cl. 127 (1969).[11] Therefore, also under Treasury Regulation 40.4061(b)–2(a) and section 4061(b) the preponderance of sales of a product for use in motor vehicles has been considered to be merely indicative that such use is its primary use, *i. e.,* it is primarily adapted for that purpose. *See* Crown Products Co. v. United States, *supra;* Rose-Derry Co. v. United States, *supra.* In *Crown Products Co.,* the Nevada district court pertinently observed that:

The record clearly shows that the great majority of sales of the universal curved hose is for use on automobiles. But as the *Durkee* case points out, the volume of sales *alone* is not sufficient to justify a finding that the hose is an automobile part. The test appears to be equally adapted and commonly used for other purposes. 239 F.Supp. at 1013–1014. (Emphasis added.)

10. Treasury Regulation on Manufacturers and Retailers Excise Tax § 40.4061(b)–2(a):

[T]he term "parts or accessories" includes (1) any article, the primary use of which is to improve, repair, replace, or serve as a component part of an automobile, truck or bus chassis, or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article, the primary use of which is in connection with such chassis, body or tractor, whether or not essential to its operation or use. . . . The term "parts or accessories" includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not fitting operations are required in connection with their installation.

11. The Court of Claims in International Manufacturing Company v. United States,

*supra,* and Masterbilt Products Corporation v. United States, *supra,* held that the classification of an article as a part or accessory was properly determined by ascertaining whether it was, due to its characteristics, "primarily adapted" for service in motor vehicles. As recently as 1967 a member of that court said in International Manufacturing Company in a *per curiam* opinion: "However, I do not believe that these products are so well adapted to such incidental uses as they are to the use for which they are primarily designed, *i. e.,* for use in private automobiles." 382 F.2d at 310. However, in Marwil Products v. United States, 418 F.2d 1345, 1350 (1969), the Court of Claims stated that "[A]rticles primarily *used* for automotive purposes necessarily are subject to taxation." (Emphasis added.) With all due deference to the Court of Claims, we cannot, for the reasons stated, approve its selection of the quantitative "primarily *used*" test as determinative of the "part or accessory" classification.

### III

In the present case there can be no doubt that the taxpayer's laminated flooring was *designed*,[12] *advertised* [13] and *most often used* as a truck floor. From the record it is manifest that Burruss consulted only trucking concerns before initiating production of the laminated flooring, advertised its product exclusively in publications appealing to trucking firms and sold over 95 percent of its laminated flooring for use as truck floors. Clearly, taxpayer cut the laminated boards in response to an individual order pursuant to the exact specifications, including the length and width, of a particular truck floor or floors submitted by the customer.[14] Consequently, only a very few insignificant and easily effected alterations were necessary, as advertised by Burruss, prior to the installation of its truck floors; usually it was necessary merely to notch the ends of some of the boards to fit rounded corners, door thresholds and other configurations of the truck being repaired or built and to drill small holes to facilitate attachment of the laminated flooring to that truck.[15] To the contrary, for example, it might be difficult to utilize Burruss flooring which had been ordered in a length of 40' with "tongue and groove dressing," to cover part of a cargo container surface of greater or lesser length and requiring "shiplap dressing." [16] Thus, while it appears that an order of laminated boards constituting a unique truck floor when shipped by Bur-

12. Treasury Regulation § 40.4061(b)–2(a) says in pertinent part: "The term 'parts or accessories' includes . . . (2) any article *designed* to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation. . . ." (Emphasis added.)

13. Evidence that the article in issue had been advertised and designed as an automobile part was persuasive to the Ninth Circuit in Aran v. United States, 259 F.2d 757, 760 (9 Cir. 1958), a case which, like the one at bar, involved the asserted applicability of section 4061(b).

14. The taxpayer in Earl Glass Co. v. United States, 197 F.Supp. 707 (D.Nev.1961), purchased rectangular sheets of glass from the manufacturers thereof and cut the glass into certain sizes and shapes as requested by its customers. The district court in that case held that Earl Glass Company was not a manufacturer and accordingly was not liable for the excise tax under section 4061(b), refusing to follow United States v. Keeton, 238 F.2d 878 (4 Cir. 1956), for the assigned reason that the operations performed by the taxpayer in *Keeton* were substantially more complex than those before it. Burruss relies on *Earl Glass Co.* for support in contending that its cutting of laminated boards, characterized as a raw material of general use, to precise specifications did not constitute manufacture and *a fortiori* that the laminated board flooring as sold by Burruss was not a part or accessory. We are not persuaded since, faced with a factual situation strikingly similar to that in *Earl Glass Co.*, a Virginia district court held in Binswanger Glass Company v. United States, 293 F.Supp. 676 (E.D.

Va.1968), that the taxpayer there was a manufacturer liable for the excise tax prescribed by section 4061(b). That court noted logically, in following *Keeton, supra,* that complexity is not the mark of manufacture and concluded that a new and different article, a motor vehicle part or accessory, emerged from the rectangular glass sheets which the plaintiff used as the raw material in its manufacturing process. We believe that a similar conclusion is warranted in the instant case due to the holding in *Binswanger Glass Company* and for other reasons stated above. Finally, it should be noted that the *Binswanger* court stated explicitly that its decision was not predicated upon the then new Treasury Regulation on Manufacturers and Retailers Excise Tax § 48.4061(b)–(c) (2), and (d), which was intended to cover the factual situation present in *Binswanger* and went into effect subsequent to and as a result of the decision in *Earl Glass Co.*

15. Burruss also contends that it was not a manufacturer since its laminated flooring did not become a part or accessory until taxpayer's customers made the final insignificant alterations, prior to installation. In pertinent point, Treasury Regulation § 40.4061(b)–2(a) reads: "[T]he term 'parts or accessories' includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not *fitting operations* are required in connection with their installation." (Emphasis added.)

16. A board with "tongue and groove dressing" has a horizontally protruding section along the center of one edge. Such a

russ might *possibly* have been used piecemeal in a cargo container or boxcar flooring [17] it further appears that those boards were more practically suited for, *i. e.*, primarily adapted for, use as a unitary truck floor in the truck for which ordered.

Accordingly, we hold that during the years in issue "Burruss Brand Laminated Truck Flooring" was a "part or accessory" for a truck within the purview of section 4061(b). We further hold that, under the circumstances, Burruss was the manufacturer of that product under section 4061(b). Taxpayer cut pieces of wood in various sizes, glued them together to form a longer, wider and stronger laminated board and also trimmed and dressed the boards in compliance with precise specifications supplied by its customers; thus, Burruss converted raw lumber into a manufactured product having the necessary qualities and form of a truck floor.

## IV

It is not disputed that Burruss failed to file timely federal excise tax returns for the years in issue and to make timely deposits with respect to the excise taxes due in those years. Consequently, penalties under sections 6651(a) and 6656(a) must be imposed unless taxpayer can show "reasonable cause" for his failure to comply with each section. This question was not decided below since the court found no excise tax liability. Upon the present state of the record we find it necessary to remand this case to the district court for a determination as to whether Burruss is liable for the statutorily prescribed penalties.

Reversed and remanded.

protrusion is intended to fit into a groove along the center of one edge of another board of corresponding thickness. A board with "shiplap dressing" has a horizontally protruding section on the upper part of one edge and a horizontally protruding section on the lower part of the opposite edge. Obviously, a board with tongue and groove dressing would not mesh or fit together properly with another board having shiplap dressing.

17. The district court found that the truck flooring in an order shipped by Burruss could be equally well adapted for use as railway car or cargo container flooring. There is insubstantial evidence to support this finding; the record merely contains a stipulation that *laminated boards in general* could be utilized, among other things, in railway car decking, cargo container flooring, industrial floors and squash courts. Clearly, taxpayer did not establish that its particular laminated boards possessed the structural attributes required of flooring in railway cars or cargo containers.

## EXHIBIT 1-A

*Something New...*

Burruss Brand Laminated Truck Flooring is made by *ripping* plain sawn, kiln dried hardwood dressing to 7/8" and electronically gluing the plain sawn surfaces to produce a vertical grain plank.

By the use of random spaced end to end hook joints we produce planks of ANY DESIRED LENGTH.

*Any Desired Length...*

Your need of full length planks of high quality is NOT new.

The production of planks of ANY desired length and of the highest quality IS new.

*Ready to Serve...*

We have the RAW MATERIAL, the MACHINERY, and more than SIX YEARS EXPERIENCE in producing this superior product.

These floors have been WIDELY ACCEPTED by truck body and trailer builders and by motor freight carriers.

More than 35,000 floors—or

More than 7,000,000 sq. ft. in use.

We offer PROMPT SERVICE and CAREFUL ATTENTION to your orders.

*BURRUSS Brand*

### LAMINATED
### TRUCK FLOORING

*Flooring to fit Your Needs...*

Burruss Brand Laminated Truck Flooring is milled to your exact design and to your exact dimensions.

To fit flush on cross members between hat rails

Ship lapped

Square edge to fit between hat rails

Tongue and Groove

*"Tailored to fit"*
YOUR DIMENSIONS
READY TO USE

—— NO WASTE ——

BURRUSS LAND & LUMBER CO., INC.
P. O. BOX 129
LYNCHBURG, VIRGINIA

## EXHIBIT 1-B

*Lower Installation Cost...*

Time ($) and Materials ($) are saved when full-length planks are installed.

No "Trial ($) and Error ($)" Installations
THEY FIT

*No Waste...*

"Tailored to Fit" — YOUR Dimensions
Thickness — 1" to 1¾"
Width — up to 12" Square Edge or T&G
up to 11¾" Shiplap
Length — 40' if you want it

NO WASTE from trimming the ends and dressing the sides.

NOTHING YOU BUY WILL GO IN YOUR WASTE PILE.

### 100% USABLE

*Ready to Use...*

No drying, dressing or milling required. ● Do you carry an inventory of lumber and expensive machinery to prepare your flooring? ● NEITHER IS NEEDED. ● Burruss Brand Laminated Truck Flooring is ready for installation the moment it is received—and WITHOUT ANY PREPARATION COST.

*Long Life...*

Made of Best Grade Kiln Dried Hardwoods. Vertical grain surface means twice the wear without splinters that damage your cargo.

BURRUSS BRAND
LAMINATED TRUCK FLOORING

SMOOTH But NOT SLICK

STOP PAYING DAMAGE CLAIMS
on
TORN CONTAINERS
Resulting From Rough Floors

The Long Life Flooring to Serve You Economically

### BURRUSS LAND & LUMBER., CO INC.
P. O. BOX 129, LYNCHBURG, VIRGINIA
Telephone VI 5-2343