**FIRST NATIONAL BANK IN PALM BEACH, Executor of the Will of Frederick S. Holmes, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee,**

**J. W. Perry, Third-Party Defendant.**

No. 76–3309.

United States Court of Appeals,
Fifth Circuit.

March 23, 1979.

David S. Meisel, Robert O. Rogers, Palm Beach, Fla., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Martin B. Whitaker, Atty., Tax Div., Refund Trial Sec. No. 2, Dept. of Justice, Gilbert E. Andrews, Acting Chief, Appellate Section, Dept. of Justice, William A. Friedlander, Richard W. Perkins, Libero Marinelli, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

Before GEWIN, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The primary question presented by this appeal is whether the IRS is required to apply partial deposits made because of liability for withholding taxes by an employer corporation, Armstrong Building Corporation, but without description of the debt to which they are to apply, solely to the corporation's outstanding withholding liability rather than to penalties and interest later assessed.

First National Bank in Palm Beach and J. W. Perry appeal from a judgment entered by the district court dismissing, with prejudice, FNB's suit for refund of a $10,831.60 penalty assessed under Section 6672 of the

Internal Revenue Code of 1954, 26 U.S.C. § 6672, and directing recovery of $25,247.12 from Perry, a third-party defendant against whom the government had counterclaimed. The allocation of ABC's deposits is of importance to FNB and Perry because they were responsible persons for the payment of ABC's taxes, and, under § 6672, responsible persons may be liable for a 100 percent penalty for withholding taxes not paid by their corporation, but not for penalties and interest assessed against the corporation for failure to pay withholding tax. ABC's deposits were applied by the IRS first against interest and penalties assessed against it as the employer corporation, and second against its accrued withholding liability.

FNB and Perry assert that the order of attribution was wrong and that, therefore, the 100 percent penalty assessments against them were overstated by $6,938.46. In addition, they contend that the trial judge committed reversible error in refusing to give two instructions they requested concerning the liability of a responsible person for his corporation's use of "encumbered" or "restricted" funds in accordance with provisions restricting their application rather than to pay federal withholding tax.

We conclude that the IRS acted improperly in applying partial deposits by ABC to later assessed interest and penalties, rather than to ABC's matured withholding obligation; that this resulted in a $6,938.46 over-assessment against the appellants; that FNB's motion for partial summary judgment was improperly refused; and that Perry is entitled to a $6,983.46 reduction in the amount of the judgment against him. However, the district court's denial of the two jury instructions requested by the appellants did not constitute reversible error.

I

In January 1968, ABC was incorporated, and shortly thereafter it purchased a tract of land known as Captain's Key from Seminole Corporation for the purpose of subdividing and selling the tract. Seminole took a purchase money first mortgage which provided that, as lots were sold, they would be released from the mortgage on ABC's payment to Seminole of a designated portion of the sale price. It was understood between the parties at the time of this sale that ABC's development costs would also be financed by Seminole funds, which would be secured by a mortgage.

Fifty percent of ABC's common stock was owned by Frederick S. Holmes and his son, and fifty percent was owned by Gene Armstrong. Holmes was Chairman of the Board and Treasurer; Armstrong was the President; and J. W. Perry, Holmes' personal accountant, was a director and Assistant Secretary. Holmes and his son also owned ninety-five percent of the stock of Seminole, and their attorney, James W. Winters, owned five percent. J. W. Perry was the Secretary and bookkeeper of Seminole.

Advances from Seminole to ABC for development expenses were initially placed in a bank account controlled by Winters. He prepared and signed checks on this account to pay bills brought to him by Armstrong. Because this procedure was cumbersome for Armstrong, it was soon changed to allow Armstrong to sign the checks with either Holmes or Perry as a co-signer.

During 1968 ABC began a number of construction projects, including a 20–unit apartment building, a franchised sandwich shop building, and several additions to a shopping center. In October 1968, a separate payroll account was established, at Armstrong's request, for payment of wages and payroll taxes for ABC's construction employees and other construction expenses. Checks on this account required only Armstrong's signature.

Armstrong was to furnish Holmes and Perry with information as to ABC's financial condition on a regular basis. However, from at least January 1969, until June 1969, no such information was provided. In June, after some insistence by Holmes and Perry, Armstrong provided them with a balance sheet showing ABC's financial condition as of that month. It revealed that $19,000 of employee withholding taxes for the first quarter of 1969 were in arrears. A

$5,000 deposit was then made out of the remaining funds in the payroll account.

Shortly thereafter, Holmes had Seminole advance $20,000 to ABC at Armstrong's request. These funds were deposited in ABC's general bank account, and were then used to pay current obligations that had to be satisfied before ABC could obtain draws to which it was entitled on its construction contracts. Perry co-signed checks drawn on the general account to pay these obligations. According to Perry, he and Holmes assumed that the overdue withholding tax liabilities would also be paid out of the $20,000 advance, but those funds were never used for that purpose.

During June and July, ABC received proceeds from the sale of three lots. The receipts from the sale of two of those lots were given to Seminole to reduce ABC's debt, even though the amounts turned over were, in total, $15,319.59 in excess of the amount necessary to release them from the mortgage.

Holmes and Perry later learned that the withholding tax liabilities still had not been paid and arranged for the proceeds from any further lot sales in excess of the amount payable on the Seminole mortgage to be placed in a special account for the payment of withholding taxes. Eventually, in December 1969, ABC deposited $13,132 in a federal account.

A tax return for the first quarter of 1969, showing withholding tax liability of $30,-651.06 for ABC, was filed on May 10, 1970. By that time ABC had made the following partial deposits without direction as to how they were to be applied:

| | |
|---|---|
| March 10, 1969 | $ 8,625.92 |
| June 24, 1969 | 5,000.00 |
| December 24, 1969 | 13,132.00 |
| | $26,757.92 |

The IRS assessed ABC $24,008.23 for unpaid withholding taxes for the first and second quarters of 1969, F.I.C.A. taxes, and additions to tax. When ABC was unable to pay this amount, Perry, Armstrong, and Holmes' estate were assessed with $25,-247.02 in Section 6672 penalties for the unpaid withholding liabilities of ABC; $10,-831.60 of these assessments related to the first quarter of 1969, and $14,415.52 related to the second quarter. The IRS arrived at the $10,831.60 figure for the first quarter by applying the partial deposits first to interest and penalties, and then to ABC's withholding liability.

On April 25, 1975, FNB paid in full the assessment against Holmes' estate. It then filed a timely claim for refund, and, when that claim was denied, brought this suit to recover the amount paid. The government counterclaimed against Perry for the penalty assessed against him. FNB and Perry then moved for partial summary judgment for the amount of ABC's 1969 tax deposits applied to delinquency penalties and accrued interest, rather than to withholding tax liabilities. Their motion was denied by the district court. The court also refused to give two jury instructions requested by them.

In special verdicts, the jury found that both Holmes and Perry were responsible officers, and that each had willfully failed to pay over withholding taxes. Accordingly, the district court entered judgment dismissing FNB's complaint and granting recovery against Perry for the amount of the penalty assessed against him.

II

As a general rule, if an individual who owes two debts to the same creditor makes a payment to that creditor, he has a right to designate the debt to which the payment shall be applied if he manifests his desire before or at the time of payment. However, if the debtor does not indicate his intention, the creditor may within a reasonable time designate how the payment will be applied. *E. g., Tayloe v. Sandiford,* 1822, 20 U.S. 7, 9–10, 7 Wheat. 13, 19–20, 5 L.Ed. 384, 386; *Hewitt v. United States,* 5 Cir. 1967, 377 F.2d 921, 925; Restatement of Contracts § 389 (1932). If the creditor does not make an allocation within a reasonable period of time, the court may allocate the payment in an equitable manner. Restatement of Contracts

§ 387 (1932). The creditor's choice, however, is not unfettered; as between debts already due and debts not yet owing, it must apply a payment to the due debts. Restatement of Contracts § 389 (1932); *F. H. McGraw & Co. v. Milcor Steel Co.,* 2d Cir. 1945, 149 F.2d 301, 306, *cert. denied,* 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452. *See* Restatement (Second) of Contracts § 280B, Ill. No. 4 (T.D. No. 13, 1978). This restriction is intended primarily for the protection of the debtor; therefore, its protection may be waived by the debtor's consent to a different allocation by his creditor. *F. H. McGraw & Co., supra,* 149 F.2d at 306.

■ The liability of a corporation for federal withholding taxes is payable on the due date of the return, which is, at the latest, on the thirtieth day following the end of the quarter, Treas.Reg. 31.6302(c)–1(a)(1)(iv); it becomes payable without the necessity of assessment or of notice and demand. 26 U.S.C. § 6151(a). *See United States v. Adams Building Co.,* 6 Cir. 1976, 531 F.2d 342, 343 n. 2. In contrast, although the liability of a corporation for interest and penalties for late payment of withholding taxes arises immediately upon the failure of the corporation to pay withholding taxes on time, that debt is payable only "upon notice and demand." 26 U.S.C. § 6659(a)(1). The statute does not compel the IRS to exact the penalties, and it appears that in some instances they may not be imposed. *See* 26 U.S.C. §§ 6653, 6656; *Burruss Land & Lumber Co. v. United States,* 4 Cir. 1972, 456 F.2d 38, 44; *Marcello v. Commissioner of Internal Revenue,* 5 Cir. 1967, 380 F.2d 499, 506, *cert. denied,* 1968, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835; *Graney v. United States,* S.D.W.Va. 1966, 258 F.Supp. 383, 387, *aff'd,* 4 Cir. 1967, 377 F.2d 992, *cert. denied,* 389 U.S. 1022, 88 S.Ct. 594, 19 L.Ed.2d 668.

■ ABC was required to file its withholding tax return and to pay its withholding tax liability for the first quarter of 1969 (January 1 through March 31) by April 30, 1969. When it failed to file the return and to pay the amount owed in full, it became liable for interest and penalties as of that date. However, it was not assessed with interest and penalties for late payment until July 1970, several months after it had finally filed its return for the first quarter of 1969. Therefore, ABC's subsisting debt for interest and penalties for late payment of withholding taxes did not mature until seven months after its last partial deposit, in December 1969; at the time of its June and December deposits, only its debt for withholding taxes for the first quarter of 1969 had matured. In accordance with the rule set forth in *F. H. McGraw & Co., supra,* and the Restatement of Contracts § 389 (1932), the government should have applied ABC's deposits to its withholding tax liability rather than to its liability for interest and penalties for late payment of that obligation; the district court clearly erred in refusing to grant partial summary judgment for FNB and Perry.

■ The government contends that it did not apply the deposits to any particular obligation until after ABC's tax return was filed on May 10, 1970, by which time interest and penalties had been assessed, and that it could designate, at that time, how the payments would be allocated, because both debts were then due. This assumes that a creditor may receive a payment and wait until some later time to allocate it on the basis of then prevailing conditions. The general rule, however, turns on the status of the debts at the time payment is *received.* If one debt is fully due at that moment, then the creditor may allocate the payment to other debts only if those debts were also then mature. The book entry as to allocation may be made at the later time, but the debts to which payment may be applied are only those debts that had matured at the time payment was received.[1] This rule protects the debtor and any surety

---

1. Illustration number 4 to section 280B of the Restatement (Second) of Contracts, as set forth in tentative draft number 13, indicates the operation of this rule. It provides that if "A owes B a matured debt and makes a payment without directing application," and "[t]he next day another debt from A to B matures," then "B cannot apply the payment to the latter debt."

who may change circumstances in the expectation that the payment will be applied to a debt already matured.

We recognize that, because the IRS will not be allowed to apply the deposits to interest and penalties in this case, it may not be able to recover the entire debt owed by ABC, because § 6672 limits the liability of responsible persons to liability for the taxpayer-corporation's withholding obligation, and does not penalize them for the corporation's liability for interest and penalties for late payment of withholding taxes. However, FNB and Perry could have achieved the same result simply by designating that the deposits were to be applied to the withholding tax obligation, rather than to interest or penalties. We need not inquire into the possibility that, under the circumstances, it may have been implicit that it was ABC's intention for the deposit to be applied to the withholding tax obligation. *See Tayloe v. Sandiford, supra,* 20 U.S. at 9–10, 7 Wheat. at 19–21, 5 L.Ed. at 386–87.

### III

Two instructions requested by FNB and Perry, but denied by the district court, concerned their possible liability under § 6672 for ABC's use of allegedly encumbered or otherwise restricted funds for purposes other than the payment of accrued federal withholding tax liability. One instruction concerned the $20,000 transferred to ABC by Seminole after ABC's withholding liability had arisen, allegedly for ABC's use to pay current liabilities other than withholding taxes. The other concerned funds paid to Seminole by ABC after ABC's withholding obligation had arisen, but allegedly in accordance with the terms of a mortgage that pre-existed the tax liability. Each requested instruction would have indicated that the use of encumbered funds in accordance with the terms of the encumbrance does not give rise to liability for failure to use those funds to pay federal withholding taxes. FNB and Perry contend that the trial judge erred in refusing to give the requested instructions.

As a general rule, third parties otherwise unconnected with a corporation who make a secured loan to the corporation do not thereby become persons responsible for the payment of the corporation's withholding taxes. *See United States v. Hill,* 5 Cir. 1966, 368 F.2d 617, 622–23; *Pacific National Insurance Co. v. United States,* 9 Cir. 1970, 422 F.2d 26, 30, *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269. *But see Adams v. United States,* 7 Cir. 1974, 504 F.2d 73, 76. The repayment of such a secured loan out of funds subject to the encumbrance is not a willful failure to see that the corporation pays its withholding taxes even if sufficient funds to pay the taxes do not remain after repayment of the loan. *See McCullough v. United States,* 5 Cir. 1972, 462 F.2d 588, 590. *Cf. United States v. Hill, supra,* 368 F.2d at 622. In *Slodov v. United States,* 1978, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251, the Court specifically noted that perfected security interests are often superior to government tax liens, and that Congress surely did not intend responsible persons to be found to have acted "willfully" in paying secured creditors funds to which the United States has an inferior claim. 436 U.S. at 258, 98 S.Ct. at 1791, 56 L.Ed.2d at 269.

Nevertheless, the determination of who is a responsible person and whether funds are in good faith paid on a preferred security are not matters to be determined either in a partial vacuum, filled only with legal theory, or solely on the basis of the paper relationships controlling stockholders create between themselves and the entities that are subject to their control. If individuals dominate a corporation, that relationship is relevant to whether they are "responsible persons" within the meaning of § 6672. We are concerned with actual control and economic reality, not paper facades. An officer's control of corporate purse strings is relevant to whether or not that officer is a responsible person. *Cf. Pacific National Insurance v. United States, supra; Adams v. United States, supra.* Moreover, the fact that a dominant stockholder cast his advances to the controlled

corporation in the form of a secured loan transaction may be relevant in determining whether or not he "willfully" failed to ensure that withholding taxes were paid; it may indicate that the corporation was under-capitalized, and that he in essence made the United States an involuntary and unwilling creditor of the corporation by placing on the government alone the risk that funds would be available for the payment of withholding taxes. *See Brown v. United States*, 5 Cir. 1979, 591 F.2d 1136; *Sorenson v. United States*, 9 Cir. 1975, 521 F.2d 325; *Pacific National Insurance v. United States, supra*. While we need not here decide the question, there is a possible basis for the thesis that a "responsible person" loaning funds to the corporation sufficient only to meet its net payroll may not be able to restrict those funds to uses other than the payment of withholding taxes without acting "willfully." *See Sorenson v. United States, supra*, 521 F.2d at 327–28; *United States v. Hill, supra*, 368 F.2d at 622; *Rubin v. United States*, W.D.Pa.1974, 380 F.Supp. 1176, *aff'd*, 3 Cir. 1975, 515 F.2d 507. *But see Slodov v. United States, supra*, 436 U.S. at 252 n. 14, 98 S.Ct. at 1787, 56 L.Ed.2d at 264. Because the nature and the reality of an ostensible security agreement, and not merely its form, may be relevant in determining both who was a "responsible person" and whether that responsible person acted "willfully" in failing to ensure that withholding taxes were collected and paid, an unqualified instruction regarding possible liability under § 6672 in connection with a secured transaction may be misleading unless it pinpoints the issue that it concerns; it may be improper unless the factual situation is such that the issues noted in this paragraph do not arise.

 The instruction FNB and Perry requested regarding the $20,000 transferred from Seminole to ABC was:

If money is deposited to Armstrong Building Corporation's account with spe-

cific directions as to use by a third party, and Armstrong Building Corporation had no interest in the funds or any claims thereto prior to the deposit, such funds are held as a trust fund for the use directed and the use of such funds for those purposes does not give rise to a liability for failure to use those funds to pay the United States.[2]

This instruction fails to inform the jury that they may take into account the relationship of the parties, the adequacy of the corporation's capital, the economic reality of the transaction as a loan or an advance of capital, or the bona fides of the parties. It suggests the theory that the loan could not be considered on the issue of whether or not FNB and Perry were "responsible persons." [3] It was therefore not a complete or correct instruction under the facts of the case. Moreover, the proposed instruction does not take into account that the failure to use the funds to pay withholding taxes would constitute willfulness if the loan was part of a scheme to make the United States an unwilling participant in an under-capitalized venture, *see Brown v. United States*, 5 Cir. 1979, 591 F.2d 1136; because such a proposition was supportable by the evidence, the instruction was misleading. It was also incomplete because the evidence did not establish that the $20,000 loan was subject to any specific restrictions that precluded use of the funds to pay withholding taxes; at most, the evidence showed that it was *assumed* that the loan would be used to pay ABC's current obligations, *including* withholding taxes. The district court did not err in refusing to grant the request.

 The other instruction requested by FNB and Perry and rejected by the trial court concerned whether the appellants had acted "willfully" in paying back the mortgage loans Seminole had made to ABC; it provided:

If the mortgage to Seminole from Armstrong Building Corporation was placed

---

**2.** The requested instruction was inadvertently omitted from the record, but at oral argument both counsel stipulated that the instruction set forth here is identical to that requested at trial.

**3.** Given their other connections with ABC, the loan was certainly relevant to whether Perry and FNB were responsible persons of that corporation.

on the purchased land at a time when no taxes were due and the mortgaging of the property was a good faith transaction entered into without any purpose or intent to avoid or defeat taxes and without bad faith, the payment of the mortgage obligation in accordance with its terms in a transaction that results in the United States receiving the equity above the mortgage, does not give rise to a liability to any person for failure to pay the amount paid on the mortgage to the United States.[4]

This lacks some of the faults of the other rejected instruction: it does not suggest that the secured transaction could not be considered on the "responsible person" issue, and it explicitly assumes that the transaction was in good faith. Therefore, the instruction would not preclude the jury from concluding that there was a "willful" failure to pay withholding taxes if it found that the corporation had purposely been under-capitalized with the knowledge that this would place the collection of withholding taxes at risk. However, this instruction was nonetheless misleading because it was based on an assumption of fact not supportable by the evidence: the mortgage was not paid "according to its terms" with "the United States receiving the equity above the mortgage." All of the proceeds out of the sales of lots 15 and 19 were paid to Seminole, even though those proceeds totalled $15,319.59 in excess of the amount necessary to release the lots from the mortgage. Therefore, it was not error for the trial court to refuse to give the instruction.

For the foregoing reasons, the decision of the district court is REVERSED with respect to its denial of partial summary judgment for FNB and Perry, and the case is remanded for entry of judgment consistent with this decision.

REVERSED AND REMANDED.